UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 93-8406
Summary Calendar
_____


UNITED STATES OF AMERICA,

                                    Plaintiff-Appellee,

                    versus

MARTIN GERARDO PEREZ-TORRES,
a/k/a Martin Geraldo Perez,

                                    Defendant-Appellant.

_____

Appeal from the United States District Court for the
Western District of Texas
_____

( February 18, 1994 )

Before GARWOOD, SMITH and DEMOSS, Circuit Judges.

GARWOOD, Circuit Judge:

Defendant-appellant Martin Gerardo Perez-Torres (Perez) was convicted of reentering the United States after deportation, in violation of 8 U.S.C. § 1326. Perez was sentenced to a 5-year term of imprisonment. The district court enhanced Perez's sentence because prior to his deportation he had been convicted of an aggravated felony. Perez appeals the district court's sentence because at the time of his deportation, he was informed by the Immigration and Naturalization Service (INS) that the maximum sentence he could receive for reentry was 2 years. Because we find

that Perez had fair warning that his conduct was a felony, and that section 1326 clearly defined the penalties associated with its violation, we affirm the district court's sentencing decision.

**Facts and Proceedings Below**

On November 15, 1989, Perez was convicted in the United States District Court for the Western District of Texas of using an interstate communication facility to facilitate a felony drug transaction in violation of 21 U.S.C. § 843(b), and sentenced to a term of imprisonment of 36 months followed by a 1-year term of supervised release.  On May 30, 1992, Perez, a Mexican national, was deported to Mexico and was advised by INS personnel that reentry into the United States was a felony under 8 U.S.C. § 1326, punishable by a term of imprisonment of not more than 2 years; this same information was provided to Perez in the printed portion of INS Form I-294 (Form I-294), which he signed prior to being deported.[1]  At the time of Perez's deportation, however, section 1326(b)(2) provided for an enhanced sentence of up to fifteen years' imprisonment for unlawful reentry by an alien previously convicted of an aggravated felony.[2]  Section 1326 had been amended

---

[1]    This portion of the form states:  "By law (Title 8 of United States Code, Section 1326) any deported person who returns without permission is guilty of a felony.  If convicted he may be punished by imprisonment of not more than two years and/or a fine of not more than $1,000.00."  The form also contains the printed notation:  "Form I-294 (Rev. 3-29-78)N."

[2]    Section 1326 states in relevant part:

   "(a) Subject to subsection (b) of this section, any alien whoSQ
         (1) has been arrested and deported or excluded
      and deported, and thereafter
         (2) enters, attempts to enter, or is at any time

2

in November of 1988 to increase the maximum punishment for reentry from two to fifteen years, but the version of Form I-294 that was provided to Perez at the time of his deportation had not been revised since March of 1978, and contained a message based on the pre-1988 section 1326, advising deportees that the maximum authorized sentence was two years.

On January 7, 1993, police officers arrested Perez at a motel in Austin, Texas, and charged him with possession of marihuana. At the time of his arrest, Perez was in the United States unlawfully, having reentered without obtaining consent from the Attorney General for admission after deportation.

On January 19, 1993, a federal grand jury returned a one-count indictment charging Perez with illegal reentry into the United

---

found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously excluded and deported, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,

shall be fined under Title 18, or imprisoned not more than 2 years, or both.

(b) Notwithstanding subsection (a) of this section, in the case of any alien described in such subsectionSQ
(1) whose deportation was subsequent to a conviction for commission of a felony (other than an aggravated felony), such alien shall be fined under Title 18, imprisoned not more than 5 years, or both; or
(2) whose deportation was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such Title, imprisoned not more than 15 years, or both." 8 U.S.C. § 1326(a)(b).

3

States after conviction and deportation for a felony drug-trafficking offense in violation of 8 U.S.C. § 1326. The government filed a Notice of Intent to Seek Enhancement of Sentence under 8 U.S.C. § 1326(b)(2) based on Perez's prior drug trafficking conviction.[3] On April 5, 1993, Perez pleaded guilty to the indictment.

The Presentence Report (PSR) calculated a total offense level of 21 and a Criminal History Category of IV, after adjustments for Perez's prior deportation following a felony conviction and for acceptance of responsibility, resulting in a guideline range of 57 to 71 months. Perez submitted objections to the PSR, arguing that due process limited his maximum penalty to imprisonment for two years because of the information given to him by INS at the time of his deportation. The district court denied Perez's objection.

On June 10, 1993, the district court sentenced Perez to a term of imprisonment of 60 months, a 3-year term of supervised release, and a mandatory $50 assessment. The district court also revoked Perez's term of supervised release on the drug trafficking felony and imposed a consecutive sentence of twelve months. Perez timely filed a notice of appeal from the district court's imposition of the sixty month sentence.

---

[3] In *United States v. Vasquez-Olvera*, 999 F.2d 943 (5th Cir. 1993), we held that subsection (b) of section 1326 is a sentence enhancement provision, rather than the statement of a separate offense, and hence subsection (b) may be invoked even though its prerequisites are not alleged in the indictment, which need state only the elements of section 1326(a).

## Discussion

On appeal, Perez argues that the district court's imposition of an enhanced sentence is fundamentally unfair because, although the amended section 1326(b) provides for a maximum fifteen-year sentence for aliens reentering the country after being previously convicted of an aggravated felony, the INS incorrectly advised him that, upon reentry into the United States, he would be subject to only a two-year maximum term of imprisonment. Perez contends that the statement contained in Form I-294 amounts to an affirmative misrepresentation by the government of the consequences of reentry, and thus sentencing him beyond two years violates his right to due process under the Fifth Amendment.

We review *de novo* the district court's application of constitutional standards to Perez's claim. *United States v. Shaw*, 920 F.2d 1225, 1228 (5th Cir.), *cert. denied*, 111 S.Ct. 2038 (1991). As authority for the argument that imposing a sentence in excess of two years violates due process, Perez cites several cases which hold that a criminal conviction must be overturned when the government had expressly advised a defendant that the conduct he was later convicted of was lawful. *See United States v. Pennsylvania Indus. Chem. Corp.*, 93 S.Ct. 1804, 1816 (1973) (overturning conviction of corporation for violation of environmental statute because it was not allowed to prove that it reasonably relied on current, published regulations promulgated by the Army Corps of Engineers which indicated that its conduct was lawful); *Cox v. Louisiana*, 85 S.Ct. 476, 484 (1965) (overturning conviction of demonstrator for violating statute prohibiting

5

picketing "near" a courthouse where "the highest police officials of the city, in the presence of the Sheriff and Mayor" informed demonstrators that they could gather in precise spot where they were arrested); *Raley v. Ohio*, 79 S.Ct. 1257, 1266-67 (1959) (overturning contempt convictions based on failure to answer legislative committee's questions where chairman of committee expressly informed defendants that they could invoke privilege against self-incrimination; noting, *inter alia*, that sustaining conviction would "sanction the most indefensible sort of entrapment by the State").

In all of the cases relied upon by Perez, the government misled the defendant about the *legality* of certain *conduct*. And, when a defendant is not provided with "fair warning as to what *conduct* the Government intended to make *criminal*, . . . traditional notions of fairness inherent in our system of criminal justice prevent the Government from proceeding with the prosecution." *Pennsylvania Industrial*, 93 S.Ct. at 1816-17 (emphasis added). Unlike the cases cited above, however, the INS did not inform Perez that reentry into the United States was lawful. On the contrary, Form I-294 expressly stated that reentry without permission was "a *felony*." Thus, prior to reentering the United States Perez had fair warning that the *conduct* he contemplated was *a felony*, and decided to enter the United States nonetheless.

As further support for his argument, Perez cites a number of cases holding that the punishment authorized for violation of a criminal statute must be clearly defined. *See United States v. Batchelder*, 99 S.Ct. 2198, 2203 (1979); *United States v. Harris*,

932 F.2d 1529, 1536 (5th Cir.), *cert. denied*, 112 S.Ct. 270 (1991); *Shaw*, 920 F.2d at 1228. All of the cases relied upon by Perez, however, concern whether the punishment authorized for violation of a criminal statute is clearly delineated within the *statute itself.* Although "vague sentencing provisions may post [sic] constitutional questions if they do not state with sufficient clarity the consequences of violating a given criminal statute," *Batchelder*, 99 S.Ct. at 2204, Form I-294 is not a criminal statute. Hence, the defect Perez complains of lies not in the underlying statute, but rather in a provision of a document with no relevant legal force. As Perez concedes, section 1326 clearly and unambiguously articulated the penalties associated with a reentry offense. Thus, regardless of the inaccuracy of Form I-294, the *statute* under which Perez was convicted provided notice adequate to satisfy the requirements of due process.[4] Indeed, a penalty not provided for in the statute of conviction is adequately noticed by being called for in a separate statute. *See United States v. Camacho-Dominguez*, 905 F.2d 82, 84 (5th Cir. 1990).

Though Perez's argument is cast in terms of due process, its substance is one of estoppel. *Cf. Heckler v. Community Health Services of Crawford*, 104 S.Ct. 2218 at 2224 & n.12 (1984). Estoppel against the government is problematical at best. *See Office of Personnel Management v. Richmond*, 110 S.Ct. 2465 (1990). "[I]t is well settled that the Government may not be estopped on the same terms as any other litigant," and thus it necessarily

---

[4]    We note that Form I-294 references section 1326 as making unauthorized reentry a felony.

7

follows that if estoppel were to be available against the government at all it would "at least" require demonstrating all the traditional equitable prerequisites. *Community Health Services of Crawford*, 104 S.Ct. at 2224. Those prerequisites include, in cases such as this where estoppel is sought to be based on a misrepresentation, a change in position in reasonable reliance on the misrepresentation. *Id*. at 2223. Reliance is not reasonable if at the time of acting the party seeking to invoke estoppel could reasonably have known the truth of the matter. *Id*. & n.10. Here, the relevant time is not earlier than Perez's reentry, and certainly then it would seem that reasonable opportunity for knowledge of the potential penalty was afforded by the clear and unambiguous terms of section 1326(b).[5]

The real crux of the matter, however, is that in our view the law should not, and does not, regard the willful and knowing

---

[5]  Just when Perez reentered is not shown. All we know is that it was sometime after his May 30, 1992, deportation and before June 7, 1993, when he was arrested in Austin.

We also note that estoppel against the government on the basis of "oral advice" by a government agent was rejected in *Community Health Services*. *Id*., 104 S.Ct. at 2227. Further, the Form I-294 reflected on its face that it was over ten years old when Perez was deported. Moreover, had the statute been amended after Perez was deported and before he reentered, the reentry penalty provided at the time of his deportation would not have controlled in any event. *See United States v. Gonzalez*, 988 F.2d 16 (5th Cir. 1993); *United States v. Leonard*, 868 F.2d 1393, 1399-1400 (5th Cir. 1989).

Finally, in this case there is no evidence whatever of any reliance, reasonable or otherwise. While Perez did state that he believed the maximum penalty was two years, he never gave any indication that this belief had anything whatever to do with his reentry or that had he known the maximum penalty therefor was fifteen years he would not have reentered (nor does any other evidence so indicate or even suggest). His lawyer could only argue that "that might have made a difference in whetherSQmight have given him second thoughts about coming over here."

8

commission of a felony as "reasonable" reliance for these purposes. "Estoppel is an equitable doctrine." *Community Health Services*, 104 S.Ct. at 2223. However, "he who comes into equity must come with clean hands," and thus "the doors of equity" are closed "to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the" other party. *Precision Instrument Mfg. Co. v. Automotive M.M. Co.*, 65 S.Ct. 993, 997 (1945).[6] This doctrine assumes "even wider and more significant proportions" where the matter in issue "concerns the public interest," for in such an instance the denial of equitable relief "averts an injury to the public." *Id.* Here the matter as to which Perez seeks relief is his reentry into the United States, and as to this he is tainted with extreme bad faith, for he knew such conduct was a felony and nevertheless willfully and purposefully engaged in it; hence, to avoid injury to the public, the doors of equity are closed to Perez, however improper the INS's earlier advice to him concerning the maximum sentence for that felony.

The First Circuit took a somewhat analogous view of the matter in its recent decision in *United States v. Smith*, 1994 WL 13836

---

[6]  *See also, e.g.,* 28 AM.JUR.2D *Estoppel and Waiver* § 28 at 631 (estoppel "is available only in defense of a legal or equitable right or claim made in good faith and can never be asserted to uphold crime, fraud, injustice, or wrong of any character" (footnote omitted)); *id.,* § 79 at 719 (". . . estoppel is for the protection of innocent persons, and as a rule only the innocent may invoke it. . . . [It] is available only for the protection of claims made in good faith; [one] setting up an estoppel is himself bound to the exercise of good faith in the transaction and in his reliance upon the words or conduct of the other party." (footnotes omitted)).

(1st Cir. January 28, 1994). There the alien, Smith, had been convicted in 1989 of an aggravated felony and was deported in November 1991, at which time he was furnished an INS Form I-294 advising that if he reentered without permission he would commit a felony punishable by not more than two years' confinement. Subsequently, Smith did reenter, and was convicted and sentenced under section 1326(b)(2) to seventy months' confinement. Requesting downward sentence departure, he furnished the sentencing court an affidavit stating that he relied on Form I-294 when he decided to return to the United States, and that had he known of the higher penalty he would face he would not have returned. The district court denied downward departure. On Smith's appeal, the First Circuit assumed that the district court's denial was based on its view that it was powerless to grant downward departure on such a ground. Although it agreed with Smith that this circumstance was not of a kind considered by the Sentencing Commission in formulating the guidelines, the First Circuit nevertheless held that the district court could not properly have departed downward on the basis urged by Smith, because "Smith implicitly admits he intentionally committed a felony. The sentencing court cannot countenance Smith's purposeful decision to engage in felonious conduct. . . ." We agree.

## Conclusion

Because the INS did not misinform Perez about the lawfulness of reentry, and because section 1326 gave fair warning about the consequences of reentry, the district court's imposition of a 5-year sentence did not violate Perez's due process rights.

10

Accordingly, the district court's judgment is

AFFIRMED.