**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Emmanuel AGUBATA, a/k/a Blair Zebley, a/k/a Davis Chinyere, Defendant–Appellant.**

No. 94–5504.

United States Court of Appeals, Fourth Circuit.

Argued June 9, 1995.

Decided July 27, 1995.

**1082**

**ARGUED:** Donna M. D'Alessio, Asst. Federal Public Defender, Office of the Public Defender, Baltimore, MD, for appellant. Odessa Palmer Jackson, Office of the U.S. Atty., Greenbelt, MD, for appellee. **ON BRIEF:** James K. Bredar, Federal Public Defender, Office of the Public Defender, Baltimore, MD, for appellant. Lynne A. Battaglia, U.S. Atty., Stuart A. Berman, Asst. U.S. Atty., Greenbelt, MD, for appellee.

Before WILKINSON, NIEMEYER, and HAMILTON, Circuit Judges.

Affirmed by published opinion. Judge WILKINSON wrote the opinion, in which Judge NIEMEYER and Judge HAMILTON joined.

## OPINION

WILKINSON, Circuit Judge:

Appellant Emmanuel Agubata entered a conditional plea of guilty to a charge of illegal reentry into the United States by a previously deported alien, 8 U.S.C. § 1326, and was thereafter sentenced to sixty-one months' imprisonment. Agubata appeals this sentence, contending that the government should be equitably estopped from imposing a sentence of greater than two years' imprisonment because, at the time of his deportation, he was informed by the Immigration and Naturalization Service ("INS") that the maximum sentence he could receive upon illegal reentry was two years. Because we hold that equitable estoppel is not applicable against the

government here, we affirm the sentence imposed by the district court.

## I.

Emmanuel Agubata was born in 1960 in Lagos, Nigeria. He entered the United States pursuant to a student visa in September 1982 and eventually earned a degree in criminal justice from Shaw University in North Carolina. In July 1984, he married a United States citizen; in June of the following year, he was granted legal permanent resident status by the INS.

In July 1986, Agubata was arrested in Martin County, Florida on charges of attempted possession of cocaine and marijuana. Following his plea of *nolo contendere* in December 1986, the state court withheld adjudication of guilt and placed Agubata on two years' probation. Later that month, the INS initiated deportation proceedings against Agubata pursuant to former 8 U.S.C. § 1251(a)(11) (alien is subject to deportation if convicted of violation of law or regulation relating to illicit possession of narcotics).[1] In February 1987, Agubata was found deportable under § 1251 based on the Florida disposition.

In April 1987, Agubata was again arrested. Charged in the United States District Court for the District of Columbia with the distribution of heroin and possession with intent to distribute heroin, he was convicted and sentenced to thirty-two months' imprisonment. After serving his federal sentence, he was released into the custody of the INS in May 1989 pending his deportation. Agubata's deportation was repeatedly delayed, however, due to hearings on his request for asylum.

In August 1989, the INS filed additional charges of deportability against Agubata based on the District of Columbia felony narcotics convictions. Agubata was deported to Nigeria in November 1989. At the time of his deportation, he was served with (and signed) an INS Form I–294, which warned of the consequences of illegal reentry into the United States:

---

1. Under § 602 of the Immigration Act of 1990, Pub.L. No. 101–649, 104 Stat. 4978 (Nov. 29, 1990), former 8 U.S.C. § 1251(a)(11) was recodified as 8 U.S.C. § 1251(a)(2)(B)(i).

Should you wish to return to the United States you must write this office or the American Consular Office nearest your residence abroad as to how to obtain permission to return after deportation. By law (Title 8 of United States Code, Section 1326) any deported person who returns without permission is guilty of a felony. If convicted he may be punished by imprisonment of not more than two years and/or a fine of not more than $1,000.00.

At the time of Agubata's deportation, however, 8 U.S.C. § 1326 provided for an enhanced sentence of up to fifteen years' imprisonment for unlawful reentry by an alien who is deported following conviction for an aggravated felony. 8 U.S.C. § 1326(b)(2). Congress had amended § 1326 in November 1988 to increase the maximum penalty from two to fifteen years, but Form I–294 was not revised to reflect this change.

After his deportation, Agubata at no time sought or received permission from the Attorney General to reenter the United States. He did, however, return to the United States during 1993 and was subsequently arrested in Maryland. In January 1994, a federal grand jury returned a one-count indictment charging Agubata with illegal reentry by a deported alien in violation of 8 U.S.C. § 1326.

Agubata pleaded not guilty to the indictment and moved for its dismissal on the basis of alleged constitutional defects in his deportation proceedings. The district judge denied his motion. Agubata then entered a conditional plea of guilty pursuant to Fed. R.Crim.P. 11(a)(2). At his sentencing hearing, Agubata argued that the maximum penalty for his offense should be capped at two years because the INS Form I–294 provided at the time of his deportation referenced the previous, lesser penalty. The district court disagreed and sentenced Agubata to sixty-one months' imprisonment, to be followed by a two-year term of supervised release, and a mandatory $50 assessment. Agubata appeals.

II.

Agubata contends that his sentence must be limited to two years, despite the clear terms of § 1326(b)(2), since the INS incorrectly advised him of the maximum potential penalty for illegal reentry. He argues that the government should be equitably estopped from imposing a sentence of greater length than the sentence mentioned in the INS form.

■■■ We do not agree. The doctrine of equitable estoppel is rarely invoked against the government. *See Office of Personnel Management v. Richmond,* 496 U.S. 414, 419–24, 110 S.Ct. 2465, 2468–71, 110 L.Ed.2d 387 (1990); *United States v. Perez–Torres,* 15 F.3d 403, 407 (5th Cir.) ("Estoppel against the government is problematical at best."), *cert. denied,* —— U.S. ——, 115 S.Ct. 125, 130 L.Ed.2d 69 (1994). Here, Agubata cannot establish that the government engaged in affirmative misconduct when it supplied the INS form containing erroneous information about the potential penalties for reentry. In *Maryland Dep't of Human Resources v. United States Dep't of Agric.,* 976 F.2d 1462 (4th Cir.1992), this circuit made plain that it would "decline[ ] to find equitable estoppel against the federal government absent a showing of affirmative misconduct." *Id.* at 1484 n. 24. No such conduct appears on the record before us. To the contrary, the government's failure to amend the form to reflect the new, lengthier penalty appears to be a matter of negligence. *See United States v. Ullyses–Salazar,* 28 F.3d 932, 937 (9th Cir. 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1367, 131 L.Ed.2d 223 (1995).

■■■ Moreover, Agubata has failed to demonstrate the traditional elements of a claim of estoppel, including a detrimental change in position in reasonable reliance on the government's misrepresentation. *Perez–Torres,* 15 F.3d at 407.[2] Agubata had fair warning, from the face of the INS form itself, that unauthorized reentry was a felony, but decid-

---

**2.** Whether Agubata actually relied on the erroneous information contained in the INS form when he decided to reenter the United States is questionable. When given the opportunity to allocute at his sentencing hearing, Agubata did not claim that he relied on the form in deciding to reenter the United States, nor did he submit any affidavit or testimony to establish that, had he known the maximum penalty for reentry was fifteen years, he would not have returned to the United States.

ed to return to the United States nonetheless. Regardless of the inaccuracy of Form I–294, the statute under which Agubata was convicted provided adequate notice of the potential penalty for reentry. The Fifth Circuit has noted that reliance is not reasonable if the party seeking to invoke estoppel could reasonably have known the truth of the matter. *Perez–Torres,* 15 F.3d at 407. Given the INS form's clear reference to the statute, and the statute's unambiguous recitation of the potential penalties for reentry, we cannot pronounce any reliance by Agubata "reasonable."

■■■ The real defect in Agubata's argument is that a calculated decision to commit a felony cannot be termed reasonable reliance. We agree with the Fifth Circuit that "the law should not, and does not, regard the willful and knowing commission of a felony as 'reasonable' reliance for these purposes." *Perez–Torres,* 15 F.3d at 407; *see also, e.g.,* 28 Am.Jur.2d *Estoppel and Waiver* § 28 at 631 (estoppel "can never be asserted to uphold crime, fraud, injustice, or wrong of any character") (footnote omitted). Agubata made a purposeful decision to engage in conduct he had been advised was felonious. We cannot now countenance his request for a downward departure in his sentence simply because he believed the penalty he would face for his actions would be less than what Congress had actually authorized and less than what he in fact received.[3]

### III.

For the foregoing reasons, the judgment of the district court is affirmed.

*AFFIRMED.*

---

3. Agubata also argues on appeal that the district court erred in finding it lacked the authority to depart downward from the sentence range established in the Guidelines based on the erroneous notice provided in the INS form. We agree with the First and Ninth Circuits, however, that the inaccurate information contained in Form I–294 does not provide grounds for departure from the

Guidelines. Such a departure would "run[] counter to a primary purpose of the sentencing system, which is to deter criminal conduct." *United States v. Smith,* 14 F.3d 662, 666 (1st Cir.1994); *see also Ullyses–Salazar,* 28 F.3d at 938. We accordingly affirm the sentence imposed by the district court in all respects.