**In re Ernest Benjamin ALLEN, III, Debtor.**

**W. Stephen SCOTT, Trustee, Appellant,**

**v.**

**UNITED STATES TRUSTEE, Appellee.**

**Civil Action No. 96–0057–C.**

United States District Court,
W.D. Virginia,
Charlottesville Division.

Jan. 15, 1997.

W. Stephen Scott, Trustee, Charlottesville, VA, pro se.

U.S. Trustee, Roanoke, VA, pro se.

## MEMORANDUM OPINION

MICHAEL, Senior District Judge.

The principal issue in this appeal is whether a bankruptcy trustee is permitted to invade the debtor's homestead exemption in order to realize the trustee's fees and costs arising from the sale of the debtor's property.

Ernest Benjamin Allen, III is a debtor in Chapter 7 bankruptcy proceedings.[1] W. Stephen Scott was appointed to be the Chapter 7 trustee. Allen owned property that was encumbered by a secured first lien deed of trust for the benefit of Comdial Charlottesville Federal Credit Union ("Comdial"). Allen's parents guaranteed Allen's obligation to Comdial. In his bankruptcy schedules, Allen

---

1. Allen initially filed his petition under Chapter 13, but the case was converted to a Chapter 7 proceeding.

stated that the property was worth $73,400, but a subsequent appraisal commissioned by the trustee put the value at $67,500. Comdial's lien was in the principal amount of $41,546.32. In addition, Allen owed $1943.69 in unpaid homeowners fees and $534.09 in unpaid Fluvanna County real estate taxes.[2] Finally, Allen claimed a homestead exemption in the property of $6998.

Because sufficient equity would remain in the property after satisfaction of the Comdial's secured claim, the trustee put the property up for public auction, rather than abandoning the property to foreclosure. *See* 11 U.S.C. § 554(a); *In re Lundborg,* 110 B.R. 106, 109 (Bankr.D.Conn.1990).[3] At auction, however, the property sold for less than its appraised value, the proceeds from the sale totaling only $51,985.32. The trustee reported these facts to the bankruptcy court in March 1995 and proposed to pay Comdial's lien, the county taxes, and the trustee's commission and fees, before paying the debtor's homestead exemption with any remaining equity. The bankruptcy court entered an order on April 25, 1995 adopting these recommendations and authorizing the sale of the property free of lien. In addition, the order specifically authorized payment of the trustee's commission and expenses arising from the sale.

By the time that the trustee filed his final report in October 1995, it was apparent that there was insufficient equity remaining to pay the debtor's entire homestead exemption. Instead, the trustee sought to pay off Comdial's secured claim of $45,314.72, the trustee's commission of $1567.58, and the trustee's expenses of $638.07. Although it is unclear from the record, this court assumes that the county real estate taxes were also paid. Allen would receive the balance of the money remaining—$4466.17—as a portion of his $6998 homestead exemption.

Upon learning that the trustee did not intend to pay Allen his entire homestead exemption, the United States Trustee ("U.S. Trustee") objected, contending that the bankruptcy trustee's commission and expenses could not be paid until the homestead exemption had been fully satisfied. As a result, the trustee would not receive a commission or reimbursement for any of the out-of-pocket expenses that he incurred in the course of the sale. After entertaining oral argument, the bankruptcy court ruled in favor of the U.S. Trustee, holding that the debtor's homestead exemption could not be applied to pay the trustee's fees and commission. It is from this decision that the bankruptcy trustee appeals.

The trustee argues two points on appeal. First, he contends that the U.S. Trustee is estopped from challenging the distribution because the U.S. Trustee failed to object to the bankruptcy court's April 1995 order authorizing the distribution of funds in the manner proposed by the trustee. Next, the trustee contends that he is entitled to recover his costs and expenses, including his fees, pursuant to § 506(b) and (c). This court will address each argument in turn.

## I. *Estoppel*

When the trustee filed his March 27, 1995 "Report of Trustee After Public Auction Sale and Motion for Authority to Convey Property Free of Lien," the trustee proposed "[t]hat to the extent equity exists *after the payment of administrative expenses,* costs of sale and payment of valid liens in order of priority, the Debtor is entitled to a homestead exemption of $6,998.00." (emphasis added). In addition, the trustee asked the court to enter an order authorizing sale of the property which would provide that

> all deeds of trust, judgments, tax liens and other encumbrances determined by the Trustee to be valid be removed from the title to the subject real estate and impressed upon the sale proceeds without change in priority, waiver, or prejudice, *after payment of all administrative ex-*

---

2. It was later determined that the homeowners fees were not in the form of a lien on the property.

3. The debtor favored a public auction rather than abandoning the property to foreclosure because

the debtor feared that in the event that the bank foreclosed, his parents might have remained obliged to Comdial if the foreclosure did not reap sufficient proceeds to satisfy the lien.

*penses and costs of sale, including the standard Trustee's commission.*

(emphasis added). The court issued its order authorizing the sale and "the payment of a Bankruptcy Trustee's commission pursuant to 11 U.S.C. § 506(c) calculated on the gross sale price in accordance with 11 U.S.C. § 326(a), and paid to the Trustee at the closing of the sale as an administrative expense of the sale pursuant to 11 U.S.C. § 503(b)(1)(A)." Notwithstanding the fact that neither the U.S. Trustee nor the debtor objected to the trustee's request or the bankruptcy court's order authorizing sale of the property, the U.S. Trustee now argues that because § 522(k) prevents the trustee from invading the homestead exemption for any administrative expense, it was reasonable for the U.S. Trustee to conclude that the trustee would follow the statutory mandate and pay the homestead exemption before any commission or expenses. In support of this belief, the U.S. Trustee argues that the language "without change in priority, waiver, or prejudice" evidences an ambiguity that should be construed against the trustee because this language suggests that the claims would be paid as mandated by statute. The U.S. Trustee puts too much weight on these words—the clear import of the trustee's motion for authorization and the bankruptcy court's order approving the sale was to satisfy the trustee's expenses and commission before paying the debtor's homestead exemption.

■ Notwithstanding the U.S. Trustee's *post hoc* rationalization that the trustee's motion for approval of the sale was ambiguous, the United States nevertheless may not be estopped from now challenging payment of the trustee's expenses. "[I]t is well settled that the Government may not be estopped on the same terms as any other litigant." *Heckler v. Community Health Servs.,* 467 U.S. 51, 60, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42

(1984). In addition to the traditional requirements for proof that estoppel is warranted, one asserting the defense against the government must demonstrate affirmative misconduct on the part of a government official. *See United States v. Agubata,* 60 F.3d 1081, 1083 (4th Cir.1995) (citing *Maryland Dep't of Human Resources v. United States Dep't of Agric.,* 976 F.2d 1462, 1484 n. 24 (4th Cir. 1992)), *cert. denied,* —— U.S. ——, 116 S.Ct. 929, 133 L.Ed.2d 857 (1996). The record in the instant case is devoid of any evidence or accusation of affirmative misconduct on the part of the U.S. Trustee. Accordingly, the government may not be estopped from challenging the invasion of the debtor's homestead exemption to pay the trustee's commission and expenses arising out of the sale of the debtor's property.

## II. *Assessment of Trustee's Expenses and Commission*

■ None of the parties dispute that 11 U.S.C. § 522(k) precludes assessing administrative expenses against a debtor's homestead exemption except in certain situations not relevant to the instant case.[4] The bankruptcy court found that the trustee's commission and expenses qualified as administrative expenses. In support of this conclusion, the lower court cited, *inter alia, In re Duby,* 98 B.R. 126 (Bankr.D.R.I.1989), in which the court ordered that a trustee pay the debtor's full exemption, after which he could use any remaining funds to satisfy "administrative expenses, including capital gains taxes and *Trustee's fees,* on a pro rata basis." *Id.* at 127–28 (emphasis added) (citing *In re Lambdin,* 33 B.R. 11 (Bankr.M.D.Tenn.1983)). This interpretation comports with 11 U.S.C. § 503(b)(1)(A), which defines administrative expenses to include "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement

---

4. Section 522(k) states:

Property that the debtor exempts under this section is not liable for payment of any administrative expense except—

(1) the aliquot share of the costs and expenses of avoiding a transfer of property that the debtor exempts under subsection (g) of this section, or of recovery of such property, that is

attributable to the value of the portion of such property exempted in relation to the value of the property recovered; and

(2) any costs and expenses of avoiding a transfer under subsection (f) or (h) of this section, or of recovery of property under subsection (I)(1) of this section, that the debtor has not paid.

of the case." Accordingly, a trustee's commission and expenses would appear to qualify as an administrative expense not recoverable from the debtor's homestead exemption as specified under § 522(k).

The trustee, however, argues that § 522(k) is inapplicable to the instant case because his commission and expenses should be recoverable under 11 U.S.C. § 506(b) and (c). Section 506 states that:

> (b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.
>
> (c) The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

In the trustee's view, the trustee's commission and expenses would be tied to Comdial's secured claim, and thus recoverable prior to disbursement of the debtor's homestead exemption. This court is unpersuaded that § 506 is to be considered separate and apart from the limitations of § 522(k).

Initially, this court questions whether the trustee is seeking his expenses and commission from the appropriate source.[5] Ultimately, however, this question is of no moment. Similarly, this court need not decide whether the trustee's commission and expenses are more appropriately chargeable as administrative expenses under § 503 or § 506(c) because this court is in full agreement—albeit very reluctantly—with the analysis of the lower court. As the bankruptcy court noted, a surcharge against the secured creditor under § 506(c) will only be allowed if the trustee's expenses and fees are (1) reasonable; (2) necessary to preserve or dispose of the property; and (3) for the benefit of the secured creditor. *In re Bob Grissett Golf Shoppes, Inc.*, 50 B.R. 598, 602 (Bankr. E.D.Va.1985). Whether the trustee's commission and expenses arising out of the auction of the property satisfy these criteria is ultimately irrelevant to the instant case because under the Fourth Circuit's decision in *Ford Motor Credit Co. v. Reynolds & Reynolds Co. (In re JKJ Chevrolet)*, 26 F.3d 481 (4th Cir.1994), costs and expenses—including the trustee's commission and expenses—recovered from a secured creditor pursuant to § 506(c) are to be treated as unencumbered assets recovered for the benefit of the estate, to be distributed to the administrative claimants and unsecured creditors in order of priority on a pro rata basis in the manner specified in the Bankruptcy Code. *See id.* at 484. Because the debtor's homestead exemption takes precedence over administrative claimants, *see* § 522(k), the trustee would take nothing.[6]

---

5. Section 506(c) is an exception to the general rule that "administrative expenses are paid from the unencumbered assets of a bankruptcy estate rather than from secured collateral." *Ford Motor Credit Co. v. Reynolds & Reynolds Co. (In re JKJ Chevrolet)*, 26 F.3d 481, 483 (4th Cir.1994). Neither the parties nor the bankruptcy court addressed the issue of whether it was appropriate to bring a claim under § 506(c) directly against the estate. Nevertheless, the Fourth Circuit has explained that "[t]he purpose of [§ 506(c)] is to prevent a windfall to a secured creditor at the expense of the estate. Thus, § 506(c) allows the trustee to recover administrative expenses *from the collateral of a secured creditor* to the extent that the expenditures benefit the secured creditor." *Id.* (emphasis added) (citation omitted). This explanation comports with the plain language of § 506 in which the appropriate procedure appears to be for the trustee to charge his commission to the secured

creditor's claim under § 506(c) after which the secured creditor may seek additional compensation pursuant to § 506(b), "[t]o the extent that an allowed secured claim is secured by property the value of which ... is greater than the amount of such claim." In the instant case, the trustee is seeking to recover his expenses and commission from the surplus remaining after satisfaction of the secured claim, not the secured creditor's collateral, as provided for in § 506(c).

6. Moreover, even if there were sufficient funds to satisfy a debtor's homestead exemption, "[i]f there are insufficient funds in the estate to pay all of the allowed administrative expenses, the trustee will not be paid in full, but will be required to share the funds of the estate on a pro rata basis with the other administrative claimants." *Id.* at 485.

Trustee argues strenuously that *Ford Motor Credit* is legally and factually inapplicable to the case at bar because the sole issue before the Fourth Circuit was whether administrative claimants had standing under § 506(c). Although the Fourth Circuit's language is *dictum*, its conclusions are supported by other courts. *See, e.g., Kessler v. United States Trustee (In re Kessler),* 142 B.R. 796, 800 (Bankr.W.D.Mich.1992) (noting that "§ 506(c) is designed not to reimburse individual administrative claimants, but to reimburse the estate"); *Boyd v. Dock's Corner Assocs. (In re Great Northern Forest Prods., Inc.),* 135 B.R. 46, 67 n. 27 (Bankr.W.D.Mich. 1991) (citing 11 U.S.C. §§ 503(b)(1)(A), 507(a)(1), and 726(a)(1) for the proposition that administrative expenses recovered under § 506(c) are split on a pro rata basis among administrative claimants, including the trustee). The cases cited by the trustee are not on point and cannot alter this court's conclusion that the Fourth Circuit's analysis is correct. All commissions and expenses from the sale are to be returned to the estate for distribution among any administrative claimants—including the trustee—but the debtor's homestead exemption takes precedence over such claimants.

This court recognizes the fundamental inequities that are present when a trustee helps a debtor to discharge his debts without being compensated for his services. In this instance, the debtor has succeeded in discharging his debts, protecting his parents from being called upon to guarantee his obligation to Comdial, and securing his homestead exemption, all at the expense of a trustee who properly discharged his duty under the law. Nevertheless, "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206, 108 S.Ct. 963, 969, 99 L.Ed.2d 169 (1988). In this one quotation is to be found the underlying vice of the Bankruptcy Code. It passes belief that a chancellor exercising equitable powers would deny compensation to the trustee under these circumstances.

Section 522(k) clearly evinces a decision by Congress to give greater weight to providing the debtor with a homestead exemption rather than satisfying the claims of other creditors, including the trustee. This court cannot help but conclude that absent congressional intervention, the consequences of this analysis and its judgment must compel attorneys to ponder long before accepting a proffered trusteeship. Here, the problem ultimately is that the secured property brought at public auction less than the appraised—and expected—return, through no fault of the trustee. An over-used term has particular application here: the "chilling effect" on one considering a trusteeship is patently—and painfully—obvious.

In short, the effect here is to deny the trustee his proper commission, and, worse, reimbursement of his out-of-pocket expenses—all without fault on the part of the trustee, and where the court below has, at least arguably, approved payment of these items from the proceeds of the sale. It is apparent that Congress in the Bankruptcy Code gives greater weight to preserving the debtor's homestead exemption, but the language of the Code, as it must be applied here, is another dreary case of unintended consequences.

The above comments notwithstanding, the court must rule reluctantly that the trustee is not entitled to his fee or expenses under the sections of the Bankruptcy Code set out *supra*.

An appropriate order shall this day issue.