**In re George SWANSON and Susan Swanson, Debtors.**

**Bankruptcy No. 92–35320.**

United States Bankruptcy Court,
D. New Jersey.

April 2, 1997.

Anthony J. Lagasi, Fairfield, NJ, for Debtors.

Karen E. Bezner, Scotch Plains, NJ, for Trustee.

### MEMORANDUM OPINION

STEPHEN A. STRIPP, Bankruptcy Judge.

This is the court's decision on a motion by the debtors George and Susan Swanson (hereinafter the "debtors") to compel payment of the debtors' homestead exemption from the proceeds of the sale of the debtors' real property and a cross-motion by the trustee to surcharge the debtors' exemptions for misrepresentation and concealment of assets and to reimburse the estate for the debtors' contempt. The court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 151, and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (O). The following shall constitute the court's findings of fact and conclusions of law.

### FINDINGS OF FACT

On August 20, 1992 (hereinafter the "petition date") the debtors filed a voluntary petition for relief under chapter 11 of title 11, United States Code (hereinafter the "Bankruptcy Code" or "Code"). Karen E. Bezner (hereinafter the "trustee") was subsequently appointed trustee in the case. On Schedule C of their petition, the debtors listed their principal residence (hereinafter the "property" or "premises") as exempt property and claimed a total exemption of $15,800 pursuant to Bankruptcy Code § 522(d)(1). The trustee subsequently sold the property at auction. On January 7, 1997 the court entered an order directing the debtors to remove their personal property and to vacate the premises by January 13, 1997. The personal property was not removed, however, and George Swanson remained in residence past the January 13 deadline. On January 15, 1997 the court entered an order directing the United States Marshal to remove Mr. Swanson from the property. On January 21, 1997 the court entered a further order authorizing and directing the arrest and/or detention of any persons in residence at the property for the period of time necessary for the trustee to remove and place in storage all personal property. On January 23, 1997, the United States Marshal removed Mr. Swanson from the property. Removal of the Swansons' personal property was completed the following day. Sale of the real property was closed on January 31, 1997. On February 3, 1997, after incurring in excess of $10,000 in expenses to remove George Swanson and to remove and store the debtors' personal property, the trustee filed the instant cross-motion for an order surcharging the debtors' exemption because of misrepresentations and concealment of assets and for reimbursement of the costs incurred as a result of the debtors' contempt of the January 7, 1997 order.

### The Debtors' Position

The debtors argue that the real property exemption which they claimed should be paid out of the proceeds realized from the sale of the property. The debtors assert entitlement to an exemption of $31,600, by virtue of the 1994 amendments to Code § 522. The debtors contend that the trustee's failure to move to avoid the exemption entitles the debtors to the claimed exemption. The debtors further argue that the trustee may not use the sales proceeds to pay administrative expenses. The debtors argue that pursuant to Bankruptcy Code § 522(k) property claimed as exempt is not liable for payment of administrative expenses. The debtors also argue that Mrs. Swanson was not in con-

tempt of the order to vacate because she did not have to be removed from the property.

### The Trustee's Position

The trustee argues that the expanded exemption created by the 1994 amendments to the Bankruptcy Code applies only to cases filed after October 11, 1994. The trustee argues that the debtors' exemption is governed by the statutory amounts in effect as of the petition date.

However, the trustee opposes payment of any exemptions to the debtors. The trustee argues that the debtors' exemptions should be surcharged in order to compensate the estate for payment of unpaid taxes, the diversion of assets and the costs incurred as a result of the debtors' contempt of the order to vacate the property. The trustee argues that a court may disallow exemptions where a debtor engages in fraudulent conduct and may compensate the estate for a debtor's contempt of a court order. Specifically, the trustee argues that the debtors perpetrated a fraud on the court by misrepresenting that they were current in payment of accruing real estate taxes, which in fact were not paid. The trustee argues that the nonpayment of real estate taxes has rendered the estate administratively insolvent.[1] The trustee also alleges that the debtors have diverted substantial income and assets from the estate to a company controlled by Mr. Swanson and that the debtors have failed to provide the trustee with the proceeds of any debtor-in-possession operating account and updated financial records. The trustee argues that the debtors' exemptions should be surcharged with the unpaid real estate taxes which the estate must now pay and any fees incurred to investigate and recover the fraudulently conveyed assets.

Further, the trustee argues that pursuant to its contempt power the court should surcharge the debtors' exemptions for the debtors' contempt of the court's order to vacate the property. Specifically, the trustee argues that the debtors' failure to vacate necessitated the removal of Mr. Swanson and the debtors' personal property from the property for which the trustee incurred expenses totaling in excess of $10,000.[2] The trustee argues that Mrs. Swanson, although not bodily removed from the property, was equally in contempt of the order to vacate the property because her personal property remained on the premises after the designated date. The trustee also argues that the debtors' contempt caused the trustee to incur attorneys fees and other administrative costs for which the debtors must reimburse the estate. The trustee argues that the debtors' contempt coupled with their claim of expanded exemptions evidences the debtors' bad faith attempt to remove available money from the estate in order to avoid paying the administrative costs which the trustee has incurred and for which the debtors are responsible. The trustee argues that the expenses incurred as a result of the debtors' contempt exceed the exemption amount and that the debtors are therefore not entitled to any turnover.

## CONCLUSIONS OF LAW

### A. Applicable Exemption Amount

■ Section 522 of the Bankruptcy Code governs the exemptions available to a debtor. *See* 11 U.S.C. § 522. That section permits a debtor to elect certain federal exemptions provided for in subsection (d) of § 522 or to elect exemptions provided by other applica-

---

1. Specifically, the trustee argues that as of January 31, 1997 the debtors owe $24,782.34 in accrued real estate taxes. Letter of Karen E. Bezner in Further Support of Cross Motion (hereinafter "Bezner Letter"). This sum reflects: $666.88 in 1995 farm taxes; $663.63 in 1996 farm taxes; $9,507.99 in 1995 real estate taxes and $12,943.84 in 1996 real estate taxes. *Id.*

2. To date, the trustee's incurred expenses as a result of the debtors' alleged contempt, excluding attorneys' fees and costs, total $10,506.37 and include: $251.01 in locksmith fees for storage of personal property; $428.19 for initial repair of damage incurred in removal of personal property; $8,277.17 for moving and storage charges; $550 for U.S. Marshals' Service removal of Mr. Swanson; $1,000 cleaning credit to purchasers of property to cover the cost of completing removal of the debtors' personal property. Certification of Karen E. Bezner, Trustee, in Support of Trustee's Cross Motion to Surcharge Exemptions and in Opposition to Debtors' Motion for Turnover of Exemptions (hereinafter "Bezner Cert."), at ¶¶ 16–25; Bezner Letter.

ble state and federal law, unless the state has opted out of the federal exemption scheme. *See id.* § 522(b)(1). Under subsection (d)(1) of the federal exemption scheme, commonly referred to as the homestead exemption, a debtor may exempt a portion of its interest in real or personal property that the debtor uses as a residence. *See id.* § 522(d)(1). That subsection, as amended by the 1994 Amendments to the Bankruptcy Code, provides in pertinent part:

> (d) The following property may be exempted under subsection (b)(1) of this section:
>
>> (1) The debtor's aggregate interest, not to exceed $15,000 in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence....

*Id.* Because the 1994 Amendments apply only to cases filed after October 22, 1994, the effective date of the Amendments, cases filed before the effective date are not entitled to the 1994 expanded exemption scheme but are subject to the exemption scheme in effect at the time of the debtors' filing. *See* Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, 108 Stat. 4106, *reprinted in* 1994 U.S.C.C.A.N. 3340 *et seq.* As of the petition date, Code § 522(d)(1) permitted a debtor to exempt a maximum aggregate interest of $7,500 in property used as a residence. *See* 11 U.S.C. § 522(d)(1) (1988), *amended by* 11 U.S.C. § 522(d)(1) (1994).

█ In the instant case, the debtors have each claimed a $15,000 homestead exemption in the property. The trustee argues that the debtors are not entitled to the expanded exemptions because the petition date preceded the effective date of the 1994 Amendments. The court agrees with the trustee. Because the debtors filed their petition in 1992 and have elected the federal exemption scheme, they are each entitled to the $7,500 exemption amount in effect as of the petition date for an aggregate homestead exemption of $15,000. *See* 11 U.S.C. § 522(m) (1994) (providing that the exemption amounts apply separately to each individual debtor in a joint case).

## B. Fraudulent Conduct and Diversion of Assets

The trustee argues that the debtors committed fraud by misrepresenting that nearly $25,000 in unpaid real estate taxes had been paid, by failing to provide financial records or proceeds of the debtor-in-possession operating account and by diverting estate assets. The trustee points to the debtors' Fourth Modified Disclosure Statement wherein the debtors represented that the debtors' property taxes were paid from the proceeds of sale of two building lots, that the debtors were, and would remain, current with all federal, state and property taxes and that the debtors' monthly personal expense total was inclusive of real estate tax payments. *See* Bezner Cert., at ¶ 11, Ex. A. The trustee also points to a Department of Housing and Urban Development Uniform Settlement Statement which reports approximately $25,-000 in past due farm and real estate taxes as of January 31, 1997. *See id.,* at ¶ 12, Ex. B.

As previously noted, the trustee also alleges that the debtors have diverted property of the estate to a company controlled by George Swanson. The debtors have not disputed these allegations. While that silence can be construed as an admission, the record is not sufficiently developed to make findings of fraud and diversion of property of the estate. The trustee has not met her burden of proof of every element of such causes of action yet. The court therefore declines to rule on those charges without additional evidence and briefing.

## C. Contempt

The trustee argues that the debtors should be held in contempt for violating the court's January 7, 1997 order to vacate the property. The debtors do not dispute the trustee's contempt allegations with regard to Mr. Swanson. The debtors argue, however, that Mrs. Swanson is not liable for civil contempt because she did not personally remain on the property beyond January 13, 1997, the date on which they were required to vacate.

█ Pursuant to Bankruptcy Code § 105, a bankruptcy court may award damages for civil contempt. *See* 11 U.S.C. § 105. Section 105 provides in pertinent part:

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a). A bankruptcy court has the authority to impose civil contempt to enforce compliance with a court order and to compensate a party damaged by a violation of that order. *Burd v. Walters (In re Walters)*, 868 F.2d 665, 669 (4th Cir.1989); *In re Stephen W. Grosse, P.C.*, 84 B.R. 377, 383 (Bankr.E.D.Pa.1988), *aff'd, In re Grosse*, 96 B.R. 29 (E.D.Pa.1989), *aff'd, Dubin v. Jakobowski*, 879 F.2d 856 (3d Cir.1989). A party seeking to recover damages for contempt must prove by clear and convincing evidence that an order of the court was in effect and that the alleged contemnor knew of and failed to comply with the order. *Robin Woods, Inc. v. Woods*, 28 F.3d 396, 399 (3d Cir.1994); *Quinter v. Volkswagen of Am.*, 676 F.2d 969, 974 (3d Cir.1982). Because civil contempt serves a remedial purpose, proof of willfulness is not necessary to imposition of such a sanction. *Robin Woods*, 28 F.3d at 399; *In re Walters*, 868 F.2d at 668 (quoting *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949)); *University Med. Ctr. v. Sullivan*, 122 B.R. 919, 932 (E.D.Pa.1990), *aff'd*, 973 F.2d 1065 (3d Cir.), *reh'g and reh'g en banc denied* (Oct. 21, 1992).

■ In the case at bar, the court finds that the debtors knew of their obligation under the January 7, 1997 order and violated it by failing to vacate the property by the prescribed date. Mr. Swanson physically remained and the debtors failed to remove their personal effects from the property by the January 13, 1997 deadline, thereby causing the trustee to incur in excess of $10,000 in removal costs. That Mrs. Swanson was not bodily removed does not preclude a finding of contempt on her part because her personal property remained on the premises beyond the prescribed date. The court accordingly finds the debtors in civil contempt.

### D. Liability of Exemptions for Administrative Expenses: Code § 522(k)

Having found the debtors liable for civil contempt, the court turns next to the appropriate remedy. The trustee argues that the court may surcharge the debtors' exemptions for costs incurred as a result of the debtors' alleged fraud and diversion of assets and their contumacious refusal to vacate the property. The debtors argue that the costs incurred by the trustee are administrative expenses which may not be assessed against their exemptions. The debtors argue that neither disallowance nor surcharge of the exemptions is an appropriate remedy. At most, the debtors argue, the trustee has a potential cause of action to recover the expenditures.

■ The trustee has cited no authority which specifically addresses the court's power to surcharge a debtor's exemptions for costs incurred as a result of contempt. The debtors argue that the post-petition taxes and contempt costs which the trustee seeks to recover are administrative expenses. The court therefore looks initially to Bankruptcy Code § 522(k) governing the liability of exemptions for administrative expenses to determine whether the trustee may surcharge the debtors' exemptions with these costs. *See* 11 U.S.C. § 503(b)(1)(A), (B)(i) (enumerating allowed administrative expenses); 11 U.S.C. § 522(k) (governing liability of exemptions for administrative expenses).

Bankruptcy Code § 522(k) provides:

(k) Property that the debtor exempts under this section is not liable for payment of any administrative expense except—

(1) the aliquot share of the costs and expenses of avoidance a transfer of property that the debtor exempts under subsection (g) of this section, or of recovery of such property, that is attributable to the value of the portion of such property exempted in relation to the value of the property recovered; and

(2) any costs and expenses of avoiding a transfer under subsection (f) or (h) of this section, or of recovery of property under subsection (I)(*l*) of this section, that the debtor has not paid.

11 U.S.C. § 522(k). Under normal circumstances, a trustee is prohibited from surcharging a debtor's exemptions with administrative expenses. *See id.; Scott v. United States Trustee (In re Allen),* 203 B.R. 925, 929–30 (W.D.Va.1997); *In re Turner,* 190 B.R. 836, 841 (Bankr.S.D.Ohio 1996) (quoting 11 U.S.C. § 522(k)); *In re Barlock,* 121 B.R. 13, 15 (Bankr.N.D.Ohio 1990); *In re Duby,* 98 B.R. 126, 127 (Bankr.D.R.I.1989).

The right to exemptions is not absolute, however. The bankruptcy court is a court of equity.

> One of equity's fundamental maxims is, "no wrong without a remedy." The equitable powers of a bankruptcy court, whether codified in 11 U.S.C. § 105 or "inherent," may be relied on to supply any remedy necessary or appropriate to carry out the provisions of the Code, and to prevent fraud or injustice and safeguard the public interest.

*In re Spoor–Weston, Inc.,* 139 B.R. 1009, 1015 (Bankr.N.D.Okla.1992), *aff'd,* 13 F.3d 407 (10th Cir.1993). It has therefore been held, for example, that a debtor will not be permitted to claim as exempt an asset which he or she has hidden from the trustee, and which the trustee then discovers. *See In re Doan,* 672 F.2d 831, 833 (11th Cir.1982); *In re Howard,* 6 B.R. 220, 223 (Bankr.S.D.Ohio 1980).

The trustee has not cited, and the court's research has not uncovered, any cases in which the court was asked to charge exempt property with the cost to the estate of a debtor's wrongful postpetition conduct, other than the cases in which the property in question was concealed from the trustee. This case therefore appears to be one of first impression.

▮▮▮▮ As previously noted, the debtors have been held in civil contempt for violation of the court's order to vacate the premises. The estate incurred damages as a result of that contempt. *See* n. 2, *supra.* One of the purposes of civil contempt sanctions is to compensate for losses sustained by the disobedience. *Woods,* 28 F.3d at 400. The debtors argue, however, that the trustee cannot recover the estate's damages from their exempt property. The court disagrees. Essentially the situation requires the application of the principle of setoff. The trustee is obligated to the debtors in the amount of their exemptions, and the debtors are obligated to the trustee in the amount of the damages incurred because of their contempt.

In terms of statutory construction, the court's conclusion is that the damages resulting from the debtors' contempt are not administrative expenses within the meaning of Code § 522(k), which states that exempt property is not liable for payment of administrative expenses. Code § 503(b)(1)(A) defines "administrative expenses" as "the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). These expenses are not "necessary" within the meaning of Code § 503(b)(1)(A) because they would not have been incurred if the debtors had fulfilled their obligation to vacate the premises. The expenses in question may be administrative expenses as between the estate and the persons who rendered services removing George Swanson and the debtors' property, but they are not administrative expenses as between the estate and the debtors within the meaning of § 522(k).

## CONCLUSION

The trustee is entitled to subtract the damages incurred because of the debtors' contempt from the debtors' exempt portion of the proceeds of sale of their residence.

The trustee is also authorized to hold any excess in escrow pending the determination of whether the debtors diverted property of the estate or fraudulently misrepresented, to the detriment of the estate, that they were paying postpetition property taxes. The trustee shall submit an order within seven days under D.N.J.Bankr.Ct.R. 4(c), and shall simultaneously arrange a phone conference

to discuss further proceedings on the allegations of fraud and diversion of property.