**UNITED STATES of America,**

v.

**Mario Enrique HERNANDEZ– LANDAVERDE, Defendant.**

**No. CR. H–99–441.**

United States District Court, S.D. Texas, Houston Division.

Sept. 22, 1999.

Douglas Davis, Office of U.S. Attorney, Houston, TX, for U.S.

George Michael Degeurin, Federal Public Defender's Office, Houston, TX, for defendant.

### ORDER

HITTNER, District Judge.

Pending before the Court is Defendant Mario Enrique Hernandez–Landaverde's ("Hernandez") Motion to Dismiss the Indictment. Having considered the motions, submissions of the parties and the applicable law, the Court determines that Hernandez's motion to dismiss the indictment should be denied.

On March 9, 1996, Hernandez was deported to his native El Salvador from Houston, Texas, after serving two five year state sentences concurrently. On May 31, 1999, Hernandez was found in the United States at Houston, Texas, by the Immigration and Naturalization Service ("INS"). Hernandez had been arrested and held in the Harris County Jail for driving while intoxicated.

Hernandez was interviewed by Immigration Special Agent E. Harbin on June 13, 1999. During the interview, Hernandez admitted in a sworn statement that he is a citizen and native of El Salvador, that he had been previously deported, and that he reentered the United states illegally without obtaining permission from the Attorney General of the United States. On August 4, 1999, Hernandez was charged in a one-count indictment with violating 8 U.S.C. § 1326(a) and (b)(2). Specifically, the indictment alleged:

> On or about May 31, 1999, in the Houston Division of the Southern District of Texas, MARIO ENRIQUE HERNANDEZ–LANDAVERDE, defendant herein, an alien previously deported and removed from the United States, was found present in the United States at Houston, Texas, without having obtained the consent of the Attorney General of the United States to reapply for admission to the United States.

Hernandez now challenges the constitutionality of the indictment. Specifically, Hernandez claims that the government failed to state information allegedly required by 8 U.S.C. § 1326(a) & (b)(2) in the indictment: (1) "that the defendant was found in the United States having reentered unlawfully; and" (2) "any intent to commit the offense."

Hernandez argues first that the indictment is defective "because it alleges only that the defendant was 'found present in the United States' without permission" and that there "is no allegation that the defendant entered or attempted to enter the United States or that he did so unlawfully." In other words, Hernandez believes the indictment as drafted charges him with a status offense, a practice rendered unconstitutional in *Robinson v. California*,

370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962) (holding that punishment for status as drug addict violated Eighth and Fourteenth Amendments). Hernandez further contends that the indictment is defective because the government failed to affirmatively allege mens rea, *i.e.* intent, as an element in the indictment. In other words, Hernandez contends that the indictment, as drafted, charges him with a strict liability offense, a result allegedly not intended by Congress.

The government argues that § 1326 is not a status offense, and is a strict liability crime. In its response, the government relies on the language of the statute, and notes that the illegal act of re-entry can be implied from the facts alleged in the indictment. Further supporting the government's theory is a Ninth Circuit case, *United States v. Ayala,* 35 F.3d 423 (9th Cir.1994). The government also contends that the Fifth Circuit's rejection of a specific intent requirement for § 1326 prosecutions in *United States v. Trevino–Martinez,* 86 F.3d 65 (5th Cir.1996) mandates a finding of strict liability.

Although the Fifth Circuit has not addressed either of these issues directly, the Ninth Circuit's analysis in *Ayala* provides valuable insight to this case. In that case, the defendant questioned the constitutionality of 8 U.S.C. § 1326(a). Specifically, Ayala argued that § 1326(a) was impermissibly vague, constituted a status crime, and lacked an intent element. The Ninth Circuit addressed all three arguments, and rejected each. Ayala's first argument is inapplicable to the instant case. However, his remaining two are nearly identical to this case and each will be discussed in turn.

■ Ayala's status crime argument relied on three Supreme Court decisions: *Lambert v. California,* 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957) (holding a criminal statute that proscribed the presence of unregistered felons unconstitutional absent notice of a duty to register); *Robinson v. California,* 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962) (holding

statute that criminalized status as a drug addict was unconstitutional as statute did not include an actus reus, *i.e.* physical act, element); and *Powell v. Texas,* 392 U.S. 514, 88 S.Ct. 2145, 20 L.Ed.2d 1254 (1968) (distinguishing statute prohibiting public drunkenness from status offense of being a drug addict). Ayala contended that the status of being an alien found in the United States was the equivalent of being a drug addict and thus, prohibited by *Robinson* and its progeny. The Ninth Circuit, however, distinguished *Robinson* (as the Supreme Court had in *Powell*) and noted: "A conviction under § 1326 for being 'found in' the United States necessarily requires that a defendant commit an act: he must re-enter the United States without permission within five years after being deported." *Ayala,* 35 F.3d at 426. The Court concluded the status crime portion of its opinion by noting that Ayala's argument was, "misplaced for it is undisputed that Ayala knew it was illegal to re-enter the United States after his deportation. Even INS Form I–294 made that clear." *Id.* This Court agrees with the Ninth Circuit's status crime analysis of § 1326 in *Ayala.*

In the instant case, Hernandez presents this Court with the identical status crime argument. And, just as in *Ayala,* Hernandez was well aware of the actus reus element of 8 U.S.C. § 1326, *i.e.,* the prohibition on his re-entering the United States. Deportees are put on notice of the plain meaning of § 1326 by the deportation procedure itself. INS form I–294 is given to all deportees, and provides, in pertinent part: "By law, (Title 8 of the United States Code, Section 1326), any alien who has been ... deported ... who ... is at any time found in, the United states shall be subject to the penalties below...." Hernandez received INS form I–294 in both the English and Spanish languages. Hernandez also received a deportation hearing before an authorized officer of the United States Immigration and Naturalization Service. Finally, Hernandez signed his own Warrant of Deportation.

He cannot now claim that he was unaware of the prohibited conduct, *i.e.* the actus reus, of 8 U.S.C. § 1326: physically entering the United States. Thus, Hernandez's argument that § 1326 lacks an actus reus element is unfounded.

 Hernandez attempts to circumvent this rationale by arguing that the indictment must specifically allege his unlawful re-entry into the United States as he contends that it is an essential element of the offense. "To be sufficient, an indictment must allege each material element of the offense; if it does not, it fails to charge that offense." *United States v. Cabrera–Teran,* 168 F.3d 141, 143 (5th Cir.1999) (citations omitted). However, pursuant to the text of 8 U.S.C. § 1326, the government is only required to allege: (1) that the defendant was an alien, (2) that the defendant was "deported" as that term is contemplated by the statute, (3) that the defendant was subsequently found within the United States; and (4) that the defendant did not have the consent of the Attorney General to reapply for admission. *Id.* (citing *United States v. Wong Kim Bo,* 466 F.2d 1298, 1302 (5th Cir.1972) (remaining citations omitted)). Here, the indictment as drafted cannot be deficient because it does allege every statutorily required element of § 1326, including the aforementioned actus reus. As discussed by the Ninth Circuit in *Ayala,* to be "found in" the United States, a previously deported alien would have to physically cross the border. *See Ayala,* 35 F.3d at 425. Such action constitutes Defendant's required "unlawful re-entry," *i.e.* prohibited conduct of which Hernandez was aware.

 Hernandez's second argument addresses the mens rea, or intent, element of 8 U.S.C. § 1326. Hernandez concedes, in accordance with Fifth Circuit precedent, that § 1326 does not require proof of specific intent.[1] *United States v. Trevino–Martinez,* 86 F.3d 65 (5th Cir.1996); *see also United States v. Ortegon–Uvalde,* 179 F.3d 956 (5th Cir.1999). Therefore, § 1326 must either require proof of general intent,[2] or be classified as a strict liability offense requiring no proof of intent whatsoever.[3] *See generally Staples v. United States,* 511 U.S. 600, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994); *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952).

 Although Hernandez argues, and the government agrees, that § 1326 as currently construed qualifies as a strict liability offense, the majority of Circuits that have addressed the issue, including *Ayala,* 35 F.3d at 426, compels this Court to reach the conclusion that § 1326 requires a showing of general intent. *See e.g. United States v. Gutierrez–Gonzalez,* 184 F.3d 1160 (10th Cir.1999) (8 U.S.C. § 1326 requires "nothing more than a showing of general intent … that the defendant willfully and knowingly reentered the United States ….") (citations omitted); *United States v. Peralt–Reyes,* 131 F.3d 956, 957 (11th Cir.1997) (holding general intent jury instruction for 8 U.S.C. § 1326 was proper); *United States v. Cupa–Guillen,* 34 F.3d 860 (9th Cir.1994) (holding that 8 U.S.C. § 1326 "is a general intent crime" and requires only that prohibited conduct "was accompanied by the general intent to re-enter") (citations omit-

1. Specific intent is defined as "[t]he intent to accomplish the precise criminal act that one is later charged with. At common law, the specific-intent crimes were robbery, assault, larceny, burglary, forgery, false pretenses, embezzlement, attempt, solicitation, and conspiracy." Black's Law Dictionary 814 (7th ed.1999).

2. General intent is defined as "[t]he state of mind required for the commission of certain common-law crimes not requiring specific in-

tent or not imposing strict liability. General intent usually takes the form of recklessness (involving actual awareness of a risk and the culpable taking of that risk) or negligence (involving blameworthy inadvertence)." Black's Law Dictionary 813 (7th ed.1999).

3. Strict liability crime is defined as a "crime that does not require a mens rea element, such as speeding or attempting to carry a weapon aboard an aircraft." Black's Law Dictionary 378 (7th ed.1999).

ted); *United States v. Espinoza–Leon,* 873 F.2d 743 (4th Cir.1989) (8 U.S.C. § 1326 only requires "that the defendant acted willfully and knowingly in re-entering the United States.") (citations omitted). *But see United States v. Anton,* 683 F.2d 1011 (7th Cir.1982) (holding § 1326 requires a showing of something more than general intent).

In *Ayala,* the defendant argued that § 1326 required proof of specific intent to violate the statute. The Ninth Circuit dispensed with the defendant's argument by holding that § 1326 was a general intent crime. Hence, "all that is necessary is that Ayala entered the United States voluntarily." *Ayala,* 35 F.3d at 426. The Fifth Circuit has also held that § 1326 is not a specific intent crime. *See Trevino–Martinez,* 86 F.3d at 69. However, contrary to the government's position, the Fifth Circuit did not reach the general intent/strict liability question in *Trevino–Martinez.*

 In a case similar to *Ayala,* the Ninth Circuit further noted that it is irrelevant that § 1326 is silent regarding the requisite mens rea: "the mere 'fact that a criminal statute omits any mention of intent does not mean that it will necessarily be construed as eliminating that element from the crime denounced.'" *United States v. Cupa–Guillen,* 34 F.3d 860, 863 (9th Cir.1994) (quoting *Pena–Cabanillas v. United States,* 394 F.2d 785, 788 (9th Cir. 1968) citing *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952)). Instead, "courts should presume statutes require only general intent '[i]n the absence of an explicit statement that a crime requires specific intent.'" *United States v. Hicks,* 980 F.2d 963, 974 (5th Cir.1992) (alteration in original) (quoting *United States v. Lewis,* 780 F.2d 1140, 1143 (4th Cir.1986)). General intent is therefore the default mens rea for criminal offenses.

 A statute should only be construed a strict liability offense when it is clearly intended as such. *See generally Staples v. United States,* 511 U.S. 600, 114

S.Ct. 1793, 128 L.Ed.2d 608 (1994). "The Congress is fully capable of creating strict liability crimes when it is their intent to do so." *United States v. Garrett,* 984 F.2d 1402, 1409 (5th Cir.1993). Congress did not include any strict liability language in § 1326. Consequently, in the absence of such specific statutory language, a criminal statute should be construed as a general intent crime.

 This Court therefore joins the majority of jurisdictions that have addressed this issue in holding that 8 U.S.C. § 1326 is a general intent offense. Accordingly, this Court determines that in prosecuting a § 1326 offense, the government must show that the defendant had the general intent to re-enter United States. Such a general intent may be inferred by the fact that a defendant was previously "deported" as that term is contemplated in the statute and subsequently "found in" the United States. The general intent contemplated in § 1326 is analogous to voluntary action by the defendant. The general intent element of § 1326 is satisfied by an affirmative allegation in the indictment that the defendant was "found in" the United States after being properly "deported" as that term is contemplated in the statute. The Court determines that the indictment in the instant case is statutorily sufficient and therefore constitutional.

Based upon the foregoing, the Court

ORDERS that Hernandez's Motion to Dismiss the Indictment is DENIED.