# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

_____

m 99-20968
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

ARMANDO GUZMAN-OCAMPO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Texas
_____

December 21, 2000

Before JOLLY, JONES, and SMITH,
   Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Challenging the sufficiency of his indictment, Armando Guzman-Ocampo ("Guzman") appeals his conviction of illegally residing in the United States after deportation, in violation of 8 U.S.C. § 1326. Finding no reversible error, we affirm.

I.

Guzman, a Mexican citizen by birth who was in the United States without inspection, was served with notice and a final administrative removal order that found that he was neither a citizen of the United States nor had been admitted for permanent residence; that he had been convicted of an aggravated felony (delivery of a controlled substance); and that the administrative record demonstrated by clear and convincing evidence that he was deportable as an alien convicted of an aggravated felony. After being

advised of his rights, as contained in the notice, Guzman signed a waiver and requested deportation to Mexico.

A warrant of removal/deportation was issued, and Guzman was deported; on the same day, he was served with a warning advising that he was prohibited from entering or attempting to enter the United States at any time, because he had been ordered deported as an alien convicted of an aggravated felony. Several months later, he illegally reentered, not having applied to the Attorney General for permission to do so after deportation.

## II.

Guzman was charged with being illegally in the United States after deportation, in violation of § 1326, which creates criminal penalties for aliens who have been deported or removed and are later found in the United States without the Attorney General's consent. Guzman filed a motion to suppress evidence of his deportation and to dismiss the indictment on the ground that his deportation was illegal and could not form the basis for a prosecution under § 1326. After the court denied the motion, Guzman waived his right to a jury and proceeded to a bench trial on stipulated facts, whereupon the court found him guilty.

## III.

Guzman challenges the indictment on the ground that it failed to allege *actus reus*, specific intent, or general intent. He also contends that the court erred in not suppressing evidence of his deportation on the ground that its procedures violated due process. Our precedent specifically forecloses all but one of these challenges. We decide the remaining question in agreement with five other circuits who have considered it and in disagreement with one circuit.

## IV.

Under the Sixth Amendment, an indictment must "(1) enumerate each prima facie element of the charged offense; (2) fairly inform the defendant of the charges filed against him; and (3) provide the defendant with a double jeopardy defense against future prosecutions." *United States v. Gaytan*, 74 F.3d 545, 551 (5th Cir. 1996). These requirements provide the defendant with notice of the crime, *id.* at 552, and ensure that the grand jury has found probable cause that the defendant committed each element of the offense, *United States v. Cabera-Teran*, 168 F.3d 141, 143 (5th Cir. 1999). In sum, "[t]o be sufficient, an indictment must allege each material element of the offense; if it does not, it fails to charge that offense." *Id.*

Because the sufficiency of an indictment is jurisdictional, a defendant may, at any time, contest an indictment for failing to charge an offense. *See id.* The timing of the challenge does alter the standard of review, however. We generally review the sufficiency of an indictment *de novo* and will not reverse for "minor deficiencies that cause no prejudice." *Gaytan*, 74 F.3d at 551. Guzman, however, did not challenge the sufficiency of the indictment in the district court, so sufficiency is subject to the standard of "maximum liberality."[1]

### A.

---

[1] *United States v. Lankford*, 196 F.3d 563, 569 (5th Cir. 1999) (quoting *United States v. Fitzgerald*, 89 F.3d 218, 221 (5th Cir. 1996), and stating that an indictment is sufficient unless "it is so defective that by any reasonable construction, it fails to charge the offense for which the defendant is convicted."), *cert. denied*, 120 S. Ct. 1984 (2000).

Guzman argues that if § 1326 proscribes mere presence in the United States, it is an unconstitutional status offense. If, on the other hand, the statute requires the defendant to reenter the country illegally, the indictment is deficient because it alleges only a passive condition. In *United States v. Tovias-Marroquin*, 218 F.3d 455 (5th Cir. 2000), however, we rejected the argument that an indictment under § 1326 was deficient because it alleged only a passive status offense.

### B.

We also have rejected the claim that an indictment is fundamentally defective because it fails to allege a specific intent to violate § 1326.[2] This challenge has been rejected by all circuits that have considered this question, save one.[3]

### C.

Guzman contends that the indictment was deficient because it did not allege a general intent to reenter. Although the statute's plain language does not include a *mens rea* requirement for this element,[4] other courts have found a general intent requirement.[5]

A general intent *mens rea* under § 1326, then, merely requires that a defendant reenter the country voluntarily. This general intent requirement serves the limited purpose of preventing one from being liable under § 1326 if he crossed the border involuntarily.[6]

---

[2] *United States v. Ortegon-Uvalde*, 179 F.3d 956, 959 (5th Cir. 1999) (finding no specific intent requirement in § 1326), *cert. denied*, 120 S. Ct. 433 (2000); *United States v. Trevino-Martinez*, 86 F.3d 65, 68 (5th Cir. 1996) (finding no specific intent requirement, but not reaching question whether § 1326 is a general intent or strict liability statute).

[3] *See United States v. Gonzalez-Chavez*, 122 F.3d 15, 17-18 (8th Cir. 1997); *United States v. Henry*, 111 F.3d 111, 114 (11th Cir. 1997); *United States v. Soto*, 106 F.3d 1040, 1041 (1st Cir. 1997); *United States v. Ayala*, 35 F.3d 423, 426 (9th Cir. 1994); *United States v. Espinoza-Leon*, 873 F.2d 743, 746 (4th Cir. 1989); *United States v. Hernandez*, 693 F.2d 996, 1000 (10th Cir. 1982); *United States v. Newton*, 677 F.2d 16, 17 (2d Cir. 1982); *United States v. Hussein*, 675 F.2d 114, 116 (6th Cir. 1982). *Contra United States v. Anton*, 683 F.2d 1011 (7th Cir. 1982).

[4] Pursuant to the text of § 1326, the government is required to allege only (1) that the defendant was an alien, (2) that he was "deported" as that term is contemplated by the statute, (3) that he subsequently was found within the United States; and (4) that he did not have the consent of the Attorney General to reapply for admission.

[5] *See United States v. Salazar-Robles*, 207 F.3d 648, 650 (9th Cir.) (opining that a violation of § 1326 requires the general intent to reenter), *cert. denied*, 121 S. Ct. 145 (2000); *United States v. Martus*, 138 F.3d 95, 97 (2d Cir. 1998) (holding that government must prove voluntary act of reentry); *United States v. Peralt-Reyes*, 131 F.3d 956, 957 (11th Cir. 1997) (finding no error in instructing jury with a general intent requirement); *United States v. Martinez-Moral*, 118 F.3d 710, 713 (10th Cir. 1997) (holding that the only intent the government must prove is the intent to enter the country); *Espinoza-Leon*, 873 F.2d at 745 (holding that § 1326 requires only proof of a voluntary act by defendant). *Contra Anton* (holding that § 1326 requires showing of something more than general intent).

[6] Because the illegal conduct occurs when the defendant reenters, not when he is found, he does not even have to be in the country voluntarily when he is located. Such circumstances can arise when the defendant was "found" in prison after being
(continued...)

Even while recognizing § 1326 as a general intent crime, circuits have differed as to its implications for the indictment. The Ninth Circuit allows the jury to infer intent and the defendant to rebut the inference by showing involuntariness.[7]

That court revisited the issue in *United States v. Quintana-Torres*, 224 F.3d 1157 (9th Cir. 2000), in which the narrow issue was whether the government had introduced evidence that the defendant had entered the United States voluntarilySSnot whether the indictment had alleged a *mens rea*. The case remains useful in understanding mechanics of the general intent requirement in Ninth Circuit jurisprudence. The court noted that the government must prove voluntary entry beyond a reasonable doubt; otherwise, a defendant could be convicted, for example, for sleeping on a train that unexpectedly enters the United States. *Id.* at 1159.

Recognizing the unlikelihood of involuntary entry when an alien is found in the country at a location other than the border,[8] the court held that a "reasonable juror may well infer that the alien had the intention to be here." *Id.* The court characterized this type of proof not as a presumption of law, but as circumstantial proof that is convincing unless the defendant explains it away.

The nature of this crime is such that circumstantial evidence will most often be the only evidence available to demonstrate that the defendant was voluntarily in the country. Distance from the border, in most cases, will be sufficient evidence to allow the jury to draw the inference that presence was voluntary. A defendant would then be able to exonerate herself by offering evidence that she was in the country "against her will."[9] Quintana offered no such evidence, so his conviction was affirmed.

The Tenth Circuit has noted that the government must prove that the entry was voluntary, but the court did not include that factor as one of the elements of a violation of § 1326.[10] Other circuits include voluntary re

---

[6](...continued) incarcerated for a different crime. *United States v. Asibor*, 109 F.3d 1023, 1031-32 (5th Cir. 1997) (stating that being in the country illegally is a continuous offense); *Salazar-Robles*, 207 F.3d at 649 (opining that the argument that defendant did not voluntarily put himself in prison does not mean that he did not violate § 1326 because his presence was not voluntary).

[7] *Pena-Cabanillas v. United States*, 394 F.2d 785, 788 n.2 (9th Cir. 1968) (noting that defendant may defend against general intent on ground that he did not commit a voluntary act).

[8] Quintana was found in San Diego, California, (continued...)

---

[8](...continued) after having been deported and ordered not to reenter.

[9] This should not be construed as allowing the government to shift the burden of proof regarding voluntary presence in the country to the defendant. To do so would violate *In re Winship*, 397 U.S. 358 (1970) ("the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.").

[10] *See United States v. Martinez-Morel*, 118 F.3d 710, 716 (10th Cir. 1997) (noting that the only *mens rea* required under § 1326 is intent to enter the country); *United States v. Hernandez*, (continued...)

4

entry as one of the elements but note that voluntariness generally is not contested and that involuntary reentry is unlikely.[11]

In *Tovias-Marroquin*, 218 F.3d at 457-58, we suggested that there is a general intent requirement in § 1326. Although the jury instruction did not include the requirement that the defendant "'knowingly' re-entered the country," we reasoned that the jury was informed of the *mens rea* requirement favored by the defendant, because he and the government had told the jury that it must find that he was "knowingly in the United States." *Id.*

Adopting the suggestion in *Tovias-Marroquin*, we now join the majority of jurisdictions that have addressed this issue in deciding that § 1326 is a general intent offense. Accordingly, the government must show that the defendant had the general intent to reenter.[12]

_____

[10](...continued) 693 F.2d 996, 1000 (10th Cir. 1992) (identifying the elements of a § 1326 violation as "(1) an alien (2) who has been arrested, and (3) deported, and (4) thereafter is found in the United States, (5) without the Attorney General's consent for readmission.").

[11] *Espinoza-Leon*, 873 F.2d at 746 (noting that it was undisputed that defendant had entered voluntarily); *Diaz v. Duckworth*, 143 F.3d 345, 347 (7th Cir. 1998) (remarking that the possibility of violating § 1326 involuntarily and still being punished is "minute" and that although the defendant could be kidnaped and brought to the United States, the possibility was "far too remote").

[12] Although we decide only that this indictment was sufficient under the "maximum liberality" standard, we note that a district court has found a similar indictment sufficient when challenged in the district court. *See United States v. Hernandez-* (continued...)

The indictment alleged every statutorily required element of § 1326.[13] Guzman had notice of the charge filed against him. The indictment also fairly imported that his reentry was a voluntary act in view of the allegations that he had been excluded, deported, and removed and that he was present without having obtained the consent of the Attorney General.

In other words, the facts created a strong inference of voluntariness, just as in *Quintana-Torres*. Guzman was free to challenge the voluntariness of his entry, which he did not do. Therefore, Guzman's indictment is statutorily sufficient.

D.

We need not pause long on Guzman's final claimSSthat the expedited administrative deportation procedure under 8 U.S.C. § 1228 violates due process, and therefore all evidence of prior deportation should be suppressedSSfor Guzman concedes it is raised merely to preserve Supreme Court review. Guzman

_____

[12](...continued) *Landaverde*, 65 F.Supp. 2d 567 (S.D. Tex. 1999) (reasoning that general intent may be inferred from the fact that a defendant was previously "deported," as that term is contemplated in the statute, and subsequently was "found in" the United States.)

[13] The indictment charged:

On or about March 10, 1999, in the Southern District of Texas, Armando Guzman-Ocampo, . . . an alien previously excluded, deported, and removed from the United States, was found present in the United States, at Houston, Texas, without having obtained consent from the Attorney General of the United States to reapply for admission into the United States.

argues that having an administrative officer, as opposed to an immigration judge, prepare and execute the charge denies the alien (1) notice, (2) the opportunity to be heard, and (3) review by an impartial judge. This argument is foreclosed by *United States v. Benitez-Villafuerte*, 186 F.3d 651, 657 (5th Cir. 1999), *cert. denied*, 120 S. Ct. 838 (2000), in which we determined that "the administrative deportation procedures of § 1228 afforded Benitez the unimpeded opportunity to claim all the procedural due process to which he was constitutionally entitled."

In *Benitez-Villafuerte*, *id.* at 659, we also found that to attack collaterally a deportation proceeding under § 1326, the alien must show that the procedural defects caused actual prejudice, which requires a showing of a reasonable likelihood that, without the procedural errors, he would not have been deported. Guzman's argument that his prior deportation should have been suppressed fails under these standards. He was in the country without inspection and without being admitted for permanent residency, and he was convicted of an aggravated felony. Those undisputed facts are sufficient for deportation under § 1227(a)-(2)(A)(iii).

Although Guzman argues that his claim of bias is a "structural argument" and therefore not subject to the actual prejudice standard, the court in *Benitez-Villafuerte*, 186 F.3d at 659-60, considered and rejected an identical claim of bias. Thus, this issue, also, is foreclosed by our precedent.

AFFIRMED.