IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 00-20373

_____

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

RIGOBERTO BERRIOS-CENTENO

Defendant - Appellant

_____

Appeal from the United States District Court
for the Southern District of Texas
_____

April 27, 2001

Before KING, Chief Judge, and REAVLEY and JONES, Circuit Judges.

KING, Chief Judge:

Defendant-Appellant Rigoberto Berrios-Centeno appeals his conviction under 8 U.S.C. § 1326. For the following reasons, we AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant-Appellant Rigoberto Berrios-Centeno is a citizen of El Salvador. From 1987 through 1998, Berrios-Centeno was convicted of various crimes, such as theft, resisting arrest, criminal mischief, and driving while intoxicated. He was also deported in 1979, 1983, 1994, and 1997. On December 21, 1998, Berrios-Centeno was found by an Immigration and Naturalization

Service ("INS") agent in Houston, Texas at the Harris County Jail. The INS verified Berrios-Centeno's identity and confirmed that he had not applied for or received permission from the Attorney General of the United States to reenter the United States. See 8 U.S.C. § 1326(a), (b)(2).[1]

On September 22, 1999, Berrios-Centeno was was charged in a one-count indictment with being present in the United States as a previously deported alien under § 1326(a) and (b)(2). Then, on January 6, 2000, Berrios-Centeno orally moved to dismiss the indictment because it failed to allege any intent or actus reus

---

[1]  Section 1326 states in relevant part:

(a) In general
  Subject to subsection (b) of this section, any alien who—
        (1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter
        (2) enters, attempts to enter, or is at any time found in, the United States, unless (A) . . . the Attorney General has expressly consented to such alien's reapplying for admission; or (B) . . . such alien shall establish that he was not required to obtain such advance consent . . ., shall be fined under Title 18, or imprisoned not more than 2 years, or both.

(b) Criminal penalties for reentry of certain removed aliens
  Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection—
. . . .
        (2) whose removal was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined . . ., imprisoned not more than 20 years, or both . . . .

8 U.S.C. § 1326 (1999).

on his part.  The district court denied this motion.  On January 13, 2000, Berrios-Centeno entered a guilty plea to the indictment, and on April 18, 2000, the district court sentenced him to serve eighty-seven months in prison and imposed a three-year term of supervised release.  Berrios-Centeno timely appeals.

## II. STANDARD OF REVIEW

We review challenges to the sufficiency of the indictment, which have been preserved by being raised in the district court, under a de novo standard of review.  See United States v. Guzman-Ocampo, 236 F.3d 233, 236 (5th Cir. 2000); United States v. Asibor, 109 F.3d 1023, 1037 (5th Cir. 1997).  Furthermore, "[b]ecause an indictment is jurisdictional, . . . the defect is not waived by a guilty plea."  United States v. Cabrera-Teran, 168 F.3d 141, 143 (5th Cir. 1999) (internal quotations and citations omitted); see also United States v. Marshall, 910 F.2d 1241, 1243 (5th Cir. 1990).

## III. SUFFICIENCY OF THE INDICTMENT

In essence, Berrios-Centeno argues that the indictment violates the Fifth and Sixth Amendments to the U.S. Constitution because it does not allege any intent on his part.[2]  The

---

[2]   Berrios-Centeno also raises an issue regarding his sentence enhancement, which he received as a result of a prior felony conviction.  He argues that prior felony convictions are elements of the offense under 8 U.S.C. § 1326, as opposed to mere sentencing enhancements.  He recognizes that this issue has been resolved against him by Almendarez-Torres v. United States, 523 U.S. 224 (1998).  See United States v. Dabeit, 231 F.3d 979, 984

government responds first that § 1326 deals with a public welfare offense, and as such, courts will infer from the silence in the statute that Congress did not intend to require a <u>mens rea</u> element. If we were to determine that § 1326 requires an allegation of intent, the government next claims that this intent is fairly conveyed by the indictment.

Stemming from the Fifth and Sixth Amendments, the core idea underlying an indictment is notification. As to the Fifth Amendment, the grand jury must be notified of the basis for the charge against the defendant, "to ensure that the grand jury finds probable cause that the defendant has committed each element of the offense." <u>Cabrera-Teran</u>, 168 F.3d at 143. The Sixth Amendment requires, <u>inter alia</u>, that a defendant be fairly informed of the charges filed against him. <u>See</u> <u>United States v. Gaytan</u>, 74 F.3d 545, 551 (5th Cir. 1996). "An indictment is intended to provide notice to the defendant that allows him to intelligently consider his defense or plea." <u>United States v. Angeles-Mascote</u>, 206 F.3d 529, 532 (5th Cir. 2000); <u>see also</u> <u>Gaytan</u>, 74 F.3d at 551 (stating that, under the Sixth Amendment, an indictment provides a defendant "with a double jeopardy

<hr/>

(5th Cir. 2000) (stating, in a case regarding the very challenge that Berrios-Centeno asserts here, that lower courts are compelled to follow directly controlling Supreme Court precedent "'unless and until'" the Court speaks to the contrary (citations omitted)), <u>cert. denied</u>, 121 S. Ct. 1214 (2001). Berrios-Centeno raises this issue in order to preserve it for further review by the Supreme Court.

defense against future prosecutions"). Therefore, "[t]o be sufficient, an indictment must allege each material element of the offense; if it does not, it fails to charge that offense." Cabrera-Teran, 168 F.3d at 143 (footnote omitted); see also Angeles-Mascote, 206 F.3d at 532 (stating that a defect in an indictment is not harmless when an essential element is not specified).

By any standards, the mens rea element is "material" or "essential."[3] See, e.g., Morissette v. United States, 342 U.S. 246, 250 (1952) (stating that "human will and a consequent ability and duty of the normal individual to choose between good and evil" is a universal idea). Accordingly, we must first determine the mens rea required by § 1326 and then turn to the question whether the indictment sufficiently alleged that mens rea element.

### 1. Section 1326 Is a General Intent Offense

It is well established in our circuit that § 1326 does not compel "specific intent." See United States v. Ortegon-Uvalde, 179 F.3d 956, 959 (5th Cir.), cert. denied, 528 U.S. 979 (1999);

---

[3]  The government's argument that because § 1326 is silent as to mens rea, the mental state is not material, is without merit. See United States v. U.S. Gypsum Co., 438 U.S. 422, 438 (1978) (stating that the omission of intent from the statute is, without more, insufficient to establish that intent is irrelevant); see also United States v. Cupa-Guillen, 34 F.3d 860, 863 (9th Cir. 1994) (rejecting the assertion that because a criminal statute omits mention of intent, it will necessarily be construed as eliminating that element from the crime (relying, in part, on Morissette v. United States, 342 U.S. 246 (1952))).

5

Asibor, 109 F.3d at 1036; United States v. Treviño-Martinez, 86 F.3d 65, 68 (5th Cir. 1996).  This conclusion is also in accord with the decisions of our sister circuits.  See, e.g., United States v. Peralt-Reyes, 131 F.3d 956, 957 (11th Cir. 1997); United States v. Ayala, 35 F.3d 423, 426 (9th Cir. 1994).

As for whether § 1326 requires general intent or strict liability, our circuit's jurisprudence indicates that general intent is the default mental standard.  See United States v. Hicks, 980 F.2d 963, 974 (5th Cir. 1992) (stating in parenthetical that "courts should presume statutes require only general intent" (citing United States v. Lewis, 780 F.2d 1140, 1143 (4th Cir. 1986))).  The Supreme Court and our prior caselaw also counsel us that strict liability should be prudently and cautiously attributed to criminal statutes.  See Staples v. United States, 511 U.S. 600, 607 (1994) (accentuating that "public welfare offenses [which result in strict liability] have been created by Congress, and recognized by [the Supreme] Court, in 'limited circumstances'" (quoting United States v. U.S. Gypsum Co., 438 U.S. 422, 437 (1978))); United States v. Garrett, 984 F.2d 1402, 1409 (5th Cir. 1993) (stating that "Congress is fully capable of creating strict liability crimes when" it actually intends to do so); see also United States v. Anton, 683 F.2d 1011, 1015 (7th Cir. 1982) (discussing in depth why § 1326 does not create a public welfare offense).

6

Furthermore, in United States v. Guzman-Ocampo, this court held that "we now join the majority of jurisdictions that have addressed this issue in deciding that § 1326 is a general intent offense."  236 F.3d 233, 238-39 (5th Cir. 2000).  Guzman-Ocampo is not directly on point because it involved a situation in which the defendant had not challenged his indictment in the district court; therefore, a panel of this court addressed his challenge under a standard of "maximum liberality."  See id. at 236.  The instant case presents a situation in which a defendant did preserve his challenges to the indictment in the district court, and thus, the indictment is reviewed under a de novo standard of review.  However, the Guzman-Ocampo court itself noted with approval an opinion that came to the same conclusion in the context of the defendant raising this argument before the district court.  See id. at 239 n.12 (citing United States v. Hernandez-Landaverde, 65 F. Supp. 2d 567 (S.D. Tex. 1999)).

The indications given by the Guzman-Ocampo court, that general intent is the appropriate mental state for § 1326 offenses in all circumstances, is in accord with our sister circuits.  See, e.g., United States v. Gutierrez-Gonzalez, 184 F.3d 1160, 1165 (10th Cir.), cert. denied, 528 U.S. 1011 (1999); United States v. Ortiz-Villegas, 49 F.3d 1435, 1437 (9th Cir. 1995); United States v. Espinoza-Leon, 873 F.2d 743, 746 (4th Cir.), cert. denied, 492 U.S. 924 (1989).  But see generally Anton, 683 F.2d at 1015-18 (intimating that something more than

7

general intent is required by allowing a limited mistake of law defense, but also specifically rejecting strict liability).

Therefore, we hold that § 1326 is a general intent offense.

## 2. Indictment Sufficiently Alleged General Intent

We now determine whether Berrios-Centeno's indictment[4] sufficiently alleged the requisite general intent. General intent is broadly (and somewhat circularly) defined as the state of mind required for certain crimes not requiring specific intent or imposing strict liability. See BLACK'S LAW DICTIONARY 813 (7th ed. 1999). Our sister circuits have provided shape to this concept under § 1326 by formulating the general intent element as a voluntary act. In essence, these courts have contrasted specific and general intent as follows: specific intent concerns willful and knowing engagement in criminal behavior, while general intent concerns willful and knowing acts. Thus, a defendant may not "specifically intend" to act unlawfully, but he did "intend" to commit the act. See, e.g., United States v.

---

[4] The indictment against Berrios-Centeno states:

THE GRAND JURY CHARGES THAT:

#### Count One
On or about December 21, 1998 in the Houston Division of the Southern District of Texas,

RIGOBERTO BERRIOS-CENTENO,

defendant herein, an alien previously deported and removed from the United States, was found present in the United States at Houston, Texas, without having obtained the consent of the Attorney General of the United States to apply for readmission into the United States.

[Violation: Title 8, United States Code, Section 1326(a) and (b)(2)]

9

Parga-Rosas, 238 F.3d 1209, 1213 (9th Cir. 2001) ("Alleging that the defendant is a deported alien subsequently found in the United States without permission suffices [to allege general intent]."); United States v. Martus, 138 F.3d 95, 97 (2d Cir. 1998) ("[T]he government need only prove a voluntary act of reentry or attempted reentry by the defendant that is not expressly sanctioned by the Attorney General."); Espinoza-Leon, 873 F.2d at 746 ("[A] conviction under § 1326 requires proof merely of a voluntary act by defendant."); United States v. Miranda-Enriquez, 842 F.2d 1211, 1212 (10th Cir. 1988) ("To secure a section 1326 conviction the government must be prepared to show that the defendant's acts were intentional.  No intent to break the law . . . must be proved."); cf. Guzman-Ocampo, 236 F.3d at 237 ("A general intent mens rea under § 1326 . . . requires that a defendant reenter the country voluntarily.").

We agree with our sister circuits that general intent of the defendant to re-enter the United States, which is analogous to voluntary action by the defendant, "may be inferred by the fact that a defendant was previously 'deported' . . . and subsequently 'found in' the United States," without consent.[5]  See Hernandez-

---

[5]  Berrios-Centeno asserts that this formulation results in the defendant having to take on the government's burden of proof. We disagree because the formulation fairly portrays voluntary action.  See United States v. Carll, 105 U.S. 611, 613 (1881) (stating that the indictment must allege "all the facts necessary to bring the case within that intent").  Thus, by not using the magic words "voluntarily entered" (advocated by Berrios-Centeno), the indictment does not punt the general intent requirement to

10

Landaverde, 65 F. Supp. 2d at 572; cf. Guzman-Ocampo, 236 F.3d at 239.[6]

In this case, the indictment fairly conveyed that Berrios-Centeno's presence was a voluntary act from the allegations that he was deported, removed, and subsequently present without consent of the Attorney General.  See, e.g., Parga-Rosas, 238 F.3d at 1214; Hernandez-Landaverde, 65 F. Supp. 2d at 572 (stating that "the general intent element of § 1326 is satisfied

---

the defendant.  See Guzman-Ocampo, 236 F.3d at 238 (noting that other circuits have also recognized that such a formulation of general intent is highly unlikely to encompass involuntary action).  In this regard, we also note that Berrios-Centeno's reliance on United States v. Mekjian is inapposite because that case dealt with a specific intent statute, 18 U.S.C. § 1001, which contained the terms "knowingly and willfully."  See 505 F.2d 1320, 1324 (5th Cir. 1975).

[6]  Berrios-Centeno argues that Guzman-Ocampo found the indictment to be "statutorily sufficient," but the case did not address "constitutional insufficiency."  We do not agree.  The Guzman-Ocampo court began by laying out the constitutional requirements for sufficiency of an indictment, which include that the indictment contain each material element of the offense.  See 236 F.3d at 236.  It then determined that a general intent mens rea was such a material element (implicit in § 1326).  See id. at 238-39.  Finally, the court concluded that the indictment alleged every statutorily required element (both explicit and implicit), see id. at 239, thus finding the indictment to be constitutionally sufficient.

Berrios-Centeno also relies upon United States v. Carll in this regard.  Carll stands for the unremarkable proposition that placing the words of the statute (upon which the offense is predicated) in an indictment does not always render the indictment constitutionally sufficient.  See 105 U.S. at 612-13.  In the instant case, the language of the indictment (which tracks the language of § 1326) fairly informs the reader of all of the material elements of the offense, thus ensuring that the grand jury passed upon all essential facts and that the defendant was adequately notified of the charge against him.

11

by an affirmative allegation in the indictment that the defendant was 'found in' the United States after being properly 'deported' as that term is contemplated in the statute").

Therefore, the indictment sufficiently alleged the general intent <u>mens rea</u> required of § 1326 offenses.

## IV. CONCLUSION

For the foregoing reasons, the conviction of Defendant-Appellant Rigoberto Berrios-Centeno is AFFIRMED.