# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-50770

United States Court of Appeals
Fifth Circuit

**FILED**
July 2, 2020

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

> Plaintiff - Appellee

v.

ADRIANA MONTES-DE OCA,

> Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:19-CR-1508-1
USDC No. 3:19-MJ-549-1

Before KING, GRAVES, and OLDHAM, Circuit Judges.

PER CURIAM:*

Adriana Montes-De Oca appeals her conviction following a bench trial for the misdemeanor offense of eluding examination or inspection by Customs and Border Protection ("CBP") officers in violation of 8 U.S.C. § 1325(a)(2). She argues that the evidence was insufficient to support her conviction. For the following reasons, we affirm.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-50770

## STANDARD OF REVIEW

Where an appeal involves the district court's affirming a misdemeanor conviction by a magistrate judge ("MJ"), we review "the magistrate judge's findings of fact for clear error and conclusions of law de novo." *United States v. Vasquez-Hernandez,* 924 F.3d 164, 168 (5th Cir. 2019) (internal quotation marks and citation omitted). We also consider "the evidence in the light most favorable to the verdict, deferring to the reasonable inferences of fact drawn by the trial court." *United States v. Lee*, 217 F.3d 284, 288 (5th Cir. 2000) (citing *United States v. Cardenas*, 9 F.3d 1139, 1156 (5th Cir. 1993)). "[A] finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395 (1948). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 400-01 (1990) (citation and quotation omitted); *see also United States v. Yellow Cab Co.*, 338 U.S. 338, 342 (1949) (finding that a trial court's "choice between two permissible views of the weight of evidence is not 'clearly erroneous'" where the evidence "would support a conclusion either way").

## BACKGROUND

On an evening in January 2019, Montes-De Oca walked northbound on the Bridge of the Americas Port of Entry, which connects Ciudad Juárez, Mexico with El Paso, Texas. The bridge is comprised of several lanes for traffic traveling northbound and southbound. In the northbound lanes from Mexico into the United States, passenger vehicle lanes are aligned to the east with one pedestrian lane called a "catwalk" which is aligned to the east by cargo export lanes. For safety reasons, the pedestrian "catwalk" is fully enclosed with mesh caging and no access points to the vehicle lanes. A pedestrian passing over the

bridge to reach the northside inspection station must present admission documents to CBP officers.

At some point, Montes-De Oca was observed moving on foot in the northbound vehicle lane and was then spotted near an eagle statue located at the convergence of the northbound and southbound vehicle lanes on the United States side. Montes-De Oca jumped the barrier between the northbound and southbound vehicle lanes, proceeded to head west, and then walked north (against southbound traffic) toward the United States. A CBP officer alerted other officers about a "possible runner" trying to enter the United States without inspection through the southbound lanes. Montes-De Oca was observed "walking rapidly northwards" in the southbound cargo export lane which was backed up with semi-truck traffic.

Officer Michael Dean Keefe approached Montes-De Oca in the southbound export cargo lane and placed a hand on her to prevent her from fleeing. Montes-De Oca admitted that she had no documents that would have authorized her admission to the United States and that she was a citizen of Mexico. She was placed in handcuffs and escorted to a "passport control secondary" station. Upon further questioning by CBP officers, Montes-De Oca explained that she was "going for a walk," found herself in the middle of semi-trucks, became afraid, and walked towards the southbound pedestrian catwalk. Montes-De Oca also stated that she was going to the end of that catwalk "to see what was going on there." She then told the officers that she was returning to Mexico, that her children and husband live in the United States, and that she tried to obtain a visa but was unsuccessful. After her fingerprints were digitally scanned, database records revealed that she was voluntarily removed from the United States in April 2000.

No. 19-50770

Montes-De Oca was charged with 8 U.S.C. § 1325(a)(2) for being an alien who eluded examination or inspection by CBP officers. The MJ determined after a bench trial that:

> the sum total of the evidence was—and the—the bulk of it came from [CBP Officer] Michael Keefe, whose testimony reflected that [Montes-De Oca] was in the southbound truck lane headed north into the United States walking briskly, as it turns out, without documents. She made an admission that she was a citizen of Mexico. [The MJ] heard testimony that but for Agent Osorio's spotting of her, there was nobody there in the southbound area who would have done an inspection. And the statute requires the eluding of examination or inspection by Customs and Border Protection officials or by any immigration officials. [The MJ found] beyond a reasonable doubt that the government has proven each and every element.

The MJ found Montes-De Oca guilty and sentenced her to 111 days or time served, whichever period was less.

Montes-De Oca appealed to the district court arguing that the evidence presented at trial was legally insufficient to convict her of violating § 1325(a)(2) because the government did not establish that she made an "entry" into the United States and that she intended to evade CBP officers. The district court determined that a rational trier of fact could find Montes-De Oca guilty beyond a reasonable doubt because the Government was not required to prove "entry" under § 1325(a)(2) and the Government demonstrated that Montes-De Oca was an alien who acted knowingly to elude examination by immigration officers. After the district court affirmed her conviction, Montes-De Oca timely appealed. *See* 28 U.S.C. § 1291.

## DISCUSSION

On appeal, Montes-De Oca contends that (1) the Government had to prove "entry" to present sufficient evidence for her § 1325(a)(2) conviction and (2) the Government cannot demonstrate any evidence of her actual or

intentional evasion of inspection by immigration officers. We review each contention in turn.

### A. Whether § 1325(a)(2) requires proof of "entry"

When determining the elements of an offense, "[w]e begin, as usual, with the statutory text." *Maslenjak v. United States,* 137 S. Ct. 1918, 1924 (2017). Section 1325(a)(2) provides that "[a]ny alien who . . . eludes examination or inspection by immigration officers . . . shall, for the first commission of any such offense, be fined under Title 18 or imprisoned not more than 6 months, or both." 8 U.S.C. § 1325(a)(2).

"[T]he relevant phrase—eludes examination or inspection by immigration officers, 8 U.S.C. § 1325(a)(2)—has remained unchanged since it was first used in 1929, [and] it presumptively retains its original meaning," *United States v. Corrales-Vazquez*, 931 F.3d 944, 947-48 (9th Cir. 2019) (internal quotations omitted) (citing *Whitfield v. United States*, 574 U.S. 265 (2015)). At the time of Congress's enactment of the statute, "elude" meant "to befool, delude"; "to escape by dexterity or stratagem"; "to evade compliance with or fulfilment of (a law, order, demand, request, obligation, etc.)"; "to slip away from"; or "to remain undiscovered or unexplained." *Oxford English Dictionary* 97 (1933); *see also Webster's New Int'l Dictionary of the English Language* 713 (1929) (defining "elude" as "to delude, befool, frustrate"; "to avoid slyly" or "evade"; or "to escape discovery or explanation").

We find no reason to adopt Montes-De Oca's additional requirement of "entry" as an element of § 1325(a)(2). Montes-De Oca cites to the BIA decision, *Matter of Martinez-Serrano*, 25 I & N Dec. 151, 153-54 (BIA 2009) which offered a three-part definition of the term "entry" in the context of a defendant aiding and abetting aliens eluding examination and inspection by immigration officers in violation of § 1325(a)(2). However, that case arose from an immigration court in Arizona, and the BIA, unlike our court, was bound to

apply the Ninth Circuit's decisions. *See Peters v. Ashcroft*, 383 F.3d 302, 305 n.2 (5th Cir. 2004) ("[T]he BIA is bound only by this circuit's decisions.").

Montes-De Oca also seeks support from *United States v. Flores-Peraza*, where we noted that "§ 1325 — *at least the subpart* under which this Defendant was prosecuted — required the Government to prove that the Defendant entered the United States at a place other than one designated by immigration officers." 58 F.3d 164, 166 (5th Cir. 1995) (emphasis added). However, the defendant in *Flores-Peraza* was convicted for the "misdemeanor offense of unlawful entry at a place other than as designated by immigration officers [under § 1325(a)(1)]" which explicitly requires proof of "entry." *Id.* at 165; *see also* 8 U.S.C. § 1325(a)(1) ("[A]ny alien who (1) *enters* or *attempts to enter* the United States at any time or place other than as designated by immigration officers, . . . shall, for the first commission of any such offense, be fined under title 18 or imprisoned not more than 6 months, or both . . .") (emphasis added).

Unlike the defendant in *Flores-Peraza,* Montes-De Oca was convicted under § 1325(a)(2). As the district court correctly found, we cannot "read 'entry' as an element into § 1325(a)(2)" as that section's subpart "does not use the term 'entry.'" Indeed, the Fifth Circuit Pattern Jury Instructions do not require proof of entry, stating that in order for a jury to find the defendant guilty of § 1325(a)(2), the Government must prove that (1) the defendant was an alien and (2) the defendant knowingly eluded examination by the immigration officers. FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (Criminal Cases) 2.02B (2019).

## B. Whether § 1325(a)(2) requires proof of "specific intent"

Montes-De Oca also argues that the government cannot demonstrate any evidence of her actual or intentional evasion of inspection at the inspection point. "[O]ur circuit's jurisprudence indicates that general intent is the default mental standard." *United States v. Berrios-Centeno,* 250 F.3d 294, 298 (5th Cir.

2001). Other courts have similarly held that § 1325(a)(2) is a general intent crime. *See, e.g., United States v. Cruz-Garcia,* No. 18MJ2260-RNB-MMA, 2018 WL 8867808, at *1 (S.D. Cal. Aug. 31, 2018) ("Section 1325(a)(2) is a general intent crime . . ."); *United States v. Santiago-Ortega,* No. 18MJ3320-WVG-MMA, 2018 WL 9782517, at *1 (S.D. Cal. Sept. 21, 2018) (same); *United States v. Gloria-Martinez,* No. 18MJ3412-RNB-MMA, 2018 WL 9437360, at *1 (S.D. Cal. Oct. 17, 2018) (same).

"[G]eneral intent concerns willful and knowing acts . . . ." *Berrios-Centeno,* 250 F.3d at 299. "Thus, a defendant may not specifically intend to act unlawfully, but he did intend to commit the act." *Id.* (internal citations and quotations omitted). To demonstrate that she did not intend to knowingly elude examination by immigration officers, Montes-De Oca relies primarily on CBP officer Jorge Osorio's testimony stating it was "possible" that Montes-De Oca's intent was to go back to Mexico.[1] Even if this a plausible view of the evidence, the MJ's decision to choose an equally (if not more) permissible view is not "clearly erroneous." *See Yellow Cab Co.,* 338 U.S. at 342.

Moreover, the totality of evidence indicates that a reasonable factfinder could infer that Montes eluded inspection knowingly. *Rosemond v. United States,* 572 U.S. 65, 78 n.9 (2014) (noting that "the factfinder can draw inferences about a defendant's intent based on all the facts and circumstances

---

[1] Montes-De Oca also claims that she never intended to present herself at a primary inspection area at the Bridge of the Americas and that CBP officers allow pedestrians to return to Mexico if they no longer wish to proceed through inspection and are already in the northbound catwalk. However, we need not find that Montes-De Oca reached a point of irrevocable commitment to cross the border for a conviction under § 1325(a)(2). Montes-De Oca made the decision to act unlawfully by leaving the enclosed catwalk which routed pedestrians toward the northside inspection point, where she could have formally asked to return to Mexico, and by crossing several lanes of southbound vehicle traffic. Her actions are sufficient for the requisite finding of knowingly "eluding," which means evading compliance with orders, remaining undiscovered, or slipping away. *See Oxford English Dictionary* 97 (1933).

of a crime's commission"). Montes-De Oca admits that she left the enclosed northbound catwalk, that she crossed the barrier between northbound and southbound traffic, and that she proceeded to walk north against southbound traffic, all while ignoring signs in English and Spanish that directed pedestrians like her to the northside inspection station. When she was stopped, CBP officers testified that she was "[a]bout as far as you can get" from that pedestrian inspection area. After further questioning, Montes-De Oca gave a variety of explanations for her actions—she "was going for a walk"; she suddenly found herself in the middle of semi-trucks and became afraid; she wanted "to see what was going on [at end of the southbound pedestrian walkway]"; and she stated she wanted to return to Mexico, indicating an awareness of being in the United States.[2] She also told CBP officers that her immediate family lived in the United States, that she previously tried to obtain a visa to legally enter the United States but was unsuccessful, and that she was a Mexican citizen. It was also revealed that she was voluntarily removed from the United States in April 2000.

In sum, we find no clear error and are not left with a definite or firm conviction that a mistake was made in the lower courts' factual determinations. *See Gypsum Co.,* 333 U.S. at 395; *Cooter,* 496 U.S. at 400. Viewing the evidence and drawing all inferences in favor of the verdict, a reasonable factfinder could conclude that the evidence supported Montes-De Oca's conviction.

## CONCLUSION

For these reasons, we AFFIRM.

---

[2] We also note that the MJ held a competency hearing and found Montes-De Oca competent to stand trial.